**MAYER·BROWN**

Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

June 9, 2015

**Matthew D. Ingber**
Direct Tel +1 212 506 2373
Direct Fax +1 212 849 5973
mingber@mayerbrown.com

**VIA ECF**

The Honorable Gregory H. Woods
U.S. District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Royal Park Invs. SA/NV v. The Bank of New York Mellon*, No. 14-cv-6502 (GHW)

Dear Judge Woods:

On behalf of Defendant The Bank of New York Mellon ("BNYM"), we write to respond to Royal Park's June 2, 2015 letter submitting Judge Scheindlin's *HSBC* opinion. ECF No. 63. We respectfully disagree with Judge Scheindlin's analysis of a number of the issues, each of which is addressed in our briefs to the extent that it bears on this case. But we also wish to highlight for the Court a few portions of the opinion that support BNYM's arguments, which Royal Park does not address in its letter.

As Royal Park explains (Ltr. at 2), the court concluded in *HSBC* that "nothing in [*Retirement Board*] implicates plaintiffs' burden at the pleading stage," and found that the defendant had improperly "attempt[ed] to use [*Retirement Board*] to import a heightened pleading requirement into the RMBS context." *HSBC* at 19-20 (emphasis omitted). With respect, Judge Scheindlin misunderstood the defendant's argument in much the same way that Royal Park misunderstands ours. We have not argued that *Retirement Board* changes the pleading standard; our position (which *HSBC* acknowledges) is that *Retirement Board* clarifies the substantive law that Royal Park must satisfy to state a claim for relief. It therefore bears directly on the substance of the allegations that Royal Park must make in order to survive a motion to dismiss. As our reply brief explains, Royal Park was required to plausibly allege that BNYM had actual knowledge of loan- and trust-specific breaches. *See, e.g.*, Def. Reply at 5-7. Not a single one of Royal Park's allegations, even accepted as true, would establish such knowledge. The distinction between the pleading standard and Royal Park's burden of proof at trial is therefore nothing but a red herring. *Id.* at 5-6.

*HSBC*, moreover, rejects Royal Park's position that *Retirement Board*'s discussion of this point is "dicta." Pl. Opp'n at 18. Judge Scheindlin explained that, "[c]ertainly, at trial or summary judgment, plaintiffs must prove their claims 'loan-by-loan and trust-by-trust.'" *HSBC* at 20. Judge Forrest also recently relied on *Retirement Board*'s principle outside of the class-standing context, explaining that "[a]lthough the Second Circuit . . . was addressing the issue of class standing . . . , its analysis is equally applicable in [the supplemental jurisdiction] context."

The Honorable Gregory H. Woods
June 9, 2015
Page 2

*Blackrock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l Ass'n*, No. 14-cv-9401, 2015 WL 2359319, at *4 n.6 (S.D.N.Y. May 18, 2015); *see* Def. Reply at 5. The only "pleading standard" that our motion relies on is the rule that the plaintiffs must plausibly allege what *Retirement Board*, *HSBC*, and *U.S. Bank* all say they must ultimately prove.

Royal Park also contends that *HSBC* "further supports [its] argument that BNY Mellon was conflicted and therefore breached its duty of trust to [Royal Park] and the Class." Pl. Ltr. at 2. Although we part company with *HSBC* to the extent it concluded that the plaintiffs plausibly alleged that the defendant was beholden to the servicer and therefore conflicted, Judge Scheindlin did note that "[t]he mere fact that an indenture trustee does repeat business with an entity does not create a conflict of interest." *HSBC* at 40. As we explained, contrary to Royal Park's assertion, a trustee's business relationship with other parties to the governing agreements is not actionable. Def. Opening Br. at 33; Def. Reply at 17.

Royal Park next interprets *HSBC* to have found "that *Prudence Realization Corp. v. Atwell* . . . lends no support to defendant's assertion that the Streit Act is inapplicable to the Covered Trusts." Pl. Ltr. at 2. Again, to the extent *HSBC* did so conclude, we disagree; its analysis was based on an incorrect understanding of the *Prudence* securities. *See* Def. Opening Br. at 35; Def. Reply at 18-19. Judge Scheindlin found *Prudence* inapplicable because "the trust there held shares in *another entity*, which in turn held property, including mortgages." *HSBC* at 42 (emphasis in original). By contrast, she wrote, "the [RMBS] trusts here directly hold mortgages on real property." *Id.* With respect, that is simply not correct: The trustee under the indenture at issue in *Prudence* (specifically, the "new indenture" of April 1, 1937) held, among other things, "107 bonds secured by first mortgages." 264 A.D. 546, 549 (1st Dep't 1942). Thus, the trustee "directly h[e]ld mortgages on real property," (HSBC at 42) but contrary to *HSBC*, the securities were held to be exempt from the Streit Act.

Another part of *HSBC*'s analysis of the Streit Act supports our position: Judge Scheindlin dismissed claims under Section 124 of the Streit Act, which she found imposes no duties on the trustee (*HSBC* at 41), as we argued on page 37 of our opening brief.

Royal Park further argues that *HSBC* supports its view "that the term 'default' as used in §315(b) of the TIA is not limited to Events of Default as defined in the Governing Agreements." Pl. Ltr. at 3. We respectfully disagree with this conclusion. *See* Def. Opening Br. at 27-30; Def. Reply at 14-16. Judge Scheindlin's ruling that "the notice provision of section 315(b) is triggered by any . . . 'omission or failure of a legal or contractual duty,'" (*HSBC* at 44) relies on *Black's Law Dictionary*, without regard to what the term "default" means in the specific context of trust indentures. *See* Def. Reply at 15 (ABF *Commentaries* explaining that the "ordinary meaning" of default is an event that "is, or after notice or lapse of time would become, an Event of Default"). Only by adopting a boundless definition of "default" was Judge Scheindlin able to conclude that an indenture default can occur when a non-party to the indenture breaches a duty that is not in the indenture. Among other things, that reading would mean that the indentures themselves (which do not require the trustee to give notice in those circumstances) would be inconsistent with the TIA and could not have been qualified by the SEC in the first place (Def. Reply at 15).

The Honorable Gregory H. Woods
June 9, 2015
Page 3

      Finally, we refer the Court to Judge Scheindlin's conclusion that "Section 315(a)(1) does not impose any additional duties upon the trustee; it merely requires the indenture to contain language limiting the trustee's duties to those in the indenture" (*HSBC* at 43). We made this point on page 27 of our opening brief.

      The Court should grant BNYM's motion to dismiss.

                                        Respectfully,

                                        /s/  Matthew D. Ingber

                                        Matthew D. Ingber

cc:      All Counsel of Record (by ECF)