UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                            :

ROYAL PARK INVESTMENTS SA/NV           :
*Individually and on Behalf of All Others Similarly Situated*, :
                                            :

                           Plaintiff,      :

                                            :

                     -v -                 :

                                            :

THE BANK OF NEW YORK MELLON          :
*as Trustee*,                                       :

                                            :

                          Defendant.    :
------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/02/2016

1:14-cv-6502-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

       Royal Park Investments SA/NV ("Royal Park") filed this action on behalf of itself and

similarly situated investors against The Bank of New York Mellon ("BNYM"), which serves as the

trustee of the five residential mortgage-backed securities ("RMBS") trusts at issue in this case.  Royal

Park brings breach of contract and breach of trust claims, and alleges violations of New York's Streit

Act, N.Y. Real Prop. Law § 124, *et seq.*, with respect to all five trusts.  Royal Park also alleges

violations of the Trust Indenture Act of 1939, 15 U.S.C. §§ 77aaa *et seq.* ("TIA"), with respect to two

TIA-qualified indentures.  For the reasons outlined below, BNYM's motion to dismiss is

GRANTED in part and DENIED in part.

I.       **BACKGROUND**

      **A.  Factual Background**

       This is not the first case involving RMBS trusts and the extent of a trustee's obligations; it

will not be the last.  The case is not even the first for the parties to this action—each has been

involved in a series of cases that raise issues similar to those that are at issue here.[1]  While the parties

---

[1] Royal Park Investments SA/NV filed similar actions against other defendants.  *See, e.g.*, *Royal Park Investments SA/NV v. Wells Fargo Bank, N.A*, No. 14-cv-9764 (RMB) (S.D.N.Y. filed Dec. 11, 2014); *Royal Park*

are well familiar with the process by which RMBS trusts are created and securities are issued, the Court provides a short summary of that process, as outlined in the complaint, to offer context for the reader.

The seed from which all RMBS securities are grown is a mortgage loan to a home buyer, made by a bank or other loan originator. First Am. Comp. ("FAC") ¶ 40. Institutional entities known as loan sellers or sponsors purchase large numbers of loans from loan originators and group them into loan pools. *Id.* ¶¶ 40-41. Those pools are then sold to a depositor that transfers them to a trustee; the loans then become the property of a trust. *Id.* ¶ 43. In exchange, the trustee provides the depositor RMBS certificates—securities that represent interests in the pool of mortgages. *Id.* ¶¶ 43-44. Using the magic of financial engineering, these certificates are frequently issued in tranches, so that some RMBS certificates issued by a trust have a lower risk profile, and commensurately lower return, than other certificates issued by the same trust. *Id.* ¶ 46. The depositor then sells the RMBS certificates to securities underwriters (typically investment banks) that, in turn, market and sell them to institutional investors such as Royal Park. *Id.* ¶ 44. A servicer or master servicer is tasked with the collection of payments from borrowers and with bringing any necessary actions against delinquent borrowers who are late on payments. *Id.* ¶¶ 11, 45 & n.5. Owners of RMBS certificates are entitled to the cash flow generated by the mortgage loans. *Id.* ¶ 46.

---

*Investments SA/NA v. HSBC Bank USA Nat'l Ass'n*, No. 14-cv-8175 (SAS) (S.D.N.Y. filed Oct. 10, 2014); *Royal Park Investments SA/NA v. Deutsche Bank Nat'l Trust Co.*, No. 14-cv-4394 9(AJN) (S.D.N.Y filed June 18, 2014); *Royal Park Investments SA/NA v. U.S. Bank Nat'l Ass'n*, No. 14-cv-2590 (VM) (S.D.N.Y. filed Apr. 11, 2014); *Royal Park Investments SA/NA v. The Royal Bank of Scotland Group PLC, RBS Secs. Inc., Greenwich Capital Fin. Prods., Inc., RBS Acceptance Inc. and Fin. Asset Secs. Corp.*, No. 653541/2013 (Sup. Ct. N.Y. Cnty. Oct. 11, 2013). The Bank of New York Mellon has been named as defendant in multiple lawsuits involving residential mortgage-backed securities. *See, e.g., Phoenix Light SF Ltd., et al v. The Bank of New York Mellon*, No. 14-cv-10104 (VEC) (S.D.N.Y. filed Dec. 22, 2014); *Federal Deposit Insurance Corp v. The Bank of New York Mellon*, No. 15-cv-6560 (ALC) (S.D.N.Y. filed Aug. 19, 2015); *Retirement Board of the Policemen's Annuity and Benefit Fund of The City of Chicago v. The Bank of New York Mellon*, 11-cv-5459 (WHP) (S.D.N.Y. filed Aug. 5, 2011); *Commerce Bank et al. v. The Bank of New York Mellon*, No. 651967/2014 (Sup. Ct. N.Y. Cnty. June 27, 2014).

The documentation governing these transactions is detailed and complex, and varies depending on the nature of the underlying trust.  Three of the trusts at issue in this case are New York common law trusts; the other two are TIA-qualified indenture trusts.  *Id.* ¶ 5.  The New York common law trusts are governed by "Pooling and Servicing Agreements" ("PSAs").  *Id.*  The indenture trusts ("Indenture Trusts") are governed by trust indentures.[2]  *Id.*  The complaint describes the trust indentures, the PSAs, together with the series of other agreements entered into in connection with the creation of the trusts at issue here as the "Governing Agreements."  *Id.*  Among other things, the Governing Agreements contain certain representations and warranties ("R&Ws") by the loan seller, sponsors, trustee, or other transferors, concerning the "credit quality and characteristics" of the mortgage loans as well as "promise[s] to cure, substitute or repurchase" loans that do not comply with the R&Ws.  *Id.* ¶¶ 41-42.

The Governing Agreements also outline the trustee's duties and can generally be grouped into pre- and post-default duties.  As the FAC describes, prior to an event of default, the trustee's duties are largely administrative.  For example, the trustee must accept "all the right, title and interest of the Depositor in and to the" the underlying mortgage loans.  *Id.* ¶ 50; *see also id.*, Ex. 1 at 8.[3]  The trustee must also promptly notify the parties to the agreement when it discovers a breach of the R&Ws and, if the breaching party fails to cure that breach, the trustee has the power to enforce the obligations of that party under the Government Agreements.  FAC ¶ 54; *see also id.*, Ex. 1 at 58.

---

[2] The five trusts are SAMI 2006-AR4, NSTR 2007-C, NHEL 2006-3, GSCC 2006-1, and ECR 2005-2.  FAC ¶ 2.  The latter two are Indenture Trusts, which are trusts subject to the TIA.  *Id.* ¶¶ 5, 67.

[3] Although a district court is "normally required to look only to the allegations on the face of the complaint" when deciding a motion to dismiss under Rule 12(b)(6), "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999)).

The duties of the trustee increase significantly if the trustee has knowledge of the occurrence of events of default.  FAC ¶ 64.  Thereafter, the trustee must "exercise such of the rights and powers vested in it by [the] Agreement, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs."  *Id.* ¶ 64; *see also id.*, Ex. 1 at 117.  At issue in this motion to dismiss is whether the complaint adequately pleads that BNYM had actual knowledge of R&Ws breaches and the occurrence of an event of default, such that BNYM was subject to a heightened duty of care.  The complaint describes a series of events, including adverse press, congressional inquiries and other legal actions, all of which the Royal Park claims are adequate to establish that BNYM knew, at the very least, of the existence of the failure of a servicer to abide by its commitments, triggering an event of default and a heightened duty of care by BNYM.

Royal Park claims that the BNYM's failure to meet that heightened duty of care, together with its failure to take other actions mandated by the Governing Agreements following the occurrence of an event of default, contributed to more than a billion dollars in losses that it sustained in trusts that BNYM administered.  *Id.* ¶ 26.  Specifically, Royal Park alleges that BNYM breached its obligations, as they are described in those agreements, upon discovering that loan sellers had breached their R&Ws and upon obtaining actual knowledge of events of default.  *Id.* ¶¶ 51-57, 64-65.  In addition to the breach of contract allegations, Royal Park alleges breach of trust, violations of New York's Streit Act, as well as violations of the TIA as to the two Indenture Trusts identified in the FAC.  *Id.* ¶¶ 4, 209-14, 215-222, 195-200.

## B.  Procedural Background

Royal Park commenced this action on August 14, 2015.  Dkt No. 1.  BNYM filed a motion to dismiss that complaint on January 22, 2015.  Dkt. No. 27.  On January 26, 2015, the Court granted Royal Park leave to file an amended complaint in order to address the deficiencies identified

in the motion to dismiss, but cautioned that Royal Park should not expect further opportunities to amend.  Dkt. No. 31.  Royal Park filed an amended complaint on March 20, 2015, Dkt. No. 46, and BNYM again moved to dismiss, Dkt. No. 49.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. 556).

While a complaint need not provide "detailed factual allegations," it nevertheless must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  The facts pleaded "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Id.* (citations omitted).  The court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

## III.   DISCUSSION

### A.  Breach of Contract

"To make out a viable claim for a breach of contract [under New York law] a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach by the defendant, and (4) damages.'"  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).  At the pleading stage, "a plaintiff 'is required only to provide defendant[ ] with a short, plain notice of the claims against them pursuant to Rule 8.'"  *Ross Stores, Inc. v. Lincks*, No. 13

CIV. 1876 SAS, 2013 WL 5629646, at *2 (S.D.N.Y. Oct. 4, 2013) (quoting *Diesel Props S.r.I. v. Greys tone Bus. Credit II LLC,* 631 F.3d 42, 52 (2d Cir. 2011)).[4]  BNYM argues that Royal Park failed adequately to plead that BNYM breached its two sets of obligations under the Governing Agreements.  BNYM first argues that Royal Park does not plausibly allege that BNYM discovered breaches of the R&Ws; therefore, BNYM's obligations to notify the parties to the agreement and enforce the loan sellers' obligation to cure or repurchase the defective loans were not triggered. Mem. of Law in Supp. of The Bank of New York Mellon's Mot. to Dismiss the Am. Compl. ("Def. Br.") at 10-17; Reply Mem. in Supp. of The Bank of New York Mellon's Mot. to Dismiss the Am. Compl. ("Def. Reply") at 3-8.  Next, because Royal Park does not plausibly allege that BNYM had actual knowledge of events of default, BNYM argues, any additional duties it may have under the Governing Agreements as a result of such events did not attach.  Def. Br. at 18-23; Def. Reply at 8-11.  As explained in more detail below, Royal Park has met the requisite pleading threshold required to survive a motion to dismiss with respect to both sets of obligations.

### 1. Discovery and Actual Knowledge of the Loan Sellers' Breach of R&Ws

Royal Park alleges that BNYM failed to perform its duties under the Governing Agreements and that BNYM discovered and had actual knowledge of R&Ws breaches.  *See, e.g.*, FAC ¶¶ 74-115, 203, 206.  BNYM takes issue with the allegations, arguing that Royal Park has not plausibly alleged discovery of *specific* breaches of R&Ws and that the allegations do not establish actual, specific knowledge of the falsity of particular statements from which it is possible to infer awareness.  Def. Br. at 10 (quoting *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, 33 F. Supp. 3d at 477, 480 (S.D.N.Y. 2014)).  Without more, BNYM argues, general allegations of conditions creating risk fall short of demonstrating that it had actual knowledge.  Def. Br. at 10-12; Def. Reply at 3-7.

---

[4] Here, the only element in dispute is whether BNYM breached the contract.

BNYM is correct that proof of actual knowledge requires more than "[m]ere awareness of the ever-present risk that an issuer is mistaken, and that certain representations might be inaccurate." *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, 33 F. Supp. 3d at 481. But that is not the correct inquiry at this stage of the proceeding. As several courts in this district have held, at the motion to dismiss stage, "the question is not whether *in fact* the Trustee[ ] had [actual knowledge]—that is a factual determination left for trial. Instead, the question . . . is whether plaintiffs have pled plausible facts supporting allegations of actual knowledge." *Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 587, 602-03 (S.D.N.Y. 2015) ("*Royal Park v. HSBC*") (internal quotation marks and citations omitted) (alterations in the original); *see also Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-4394 (AJN), 2016 WL 439020, at *6 (S.D.N.Y. Feb. 3, 2016) ("*Royal Park v. Deutsche Bank*"); *Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14-CV-10104 VEC, 2015 WL 5710645, at *4 (S.D.N.Y. Sept. 29, 2015) ("*Phoenix Light v. BNYM*") ("[A]t this stage it is sufficient for Plaintiffs to allege facts that plausibly suggest a likelihood that BNYM had the requisite knowledge."); *Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of Am., NA*, 943 F. Supp. 2d 428, 442 (S.D.N.Y. 2013) ("*PABF v. BoA*") *abrogated on other grounds by Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014) ("*PABF v. BNYM*").

BNYM is also correct that, in order to prevail on its claims, at the summary judgment stage—and ultimately at trial—Royal Park bears the burden of proving specific breaches of R&Ws for each trust at issue. Relying on the Second Circuit decision in *Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago v. Bank of New York Mellon*, BNYM claims that the complaint does not plausibly allege knowledge of R&Ws breaches on a "loan-by-loan and trust-by-trust" basis. Def. Br. at 10-11 (quoting *PABF v. BNYM*, 775 F. 3d at 162). But as Royal Park points out, this argument is not valid in the procedural posture of a motion to dismiss, where the Court is evaluating the

sufficiency of the pleadings, not the ultimate proof to be presented to a finder of fact.  Pl. Mem. of

Law in Opp'n to Mot. to Dismiss ("Pl. Opp'n.") at 18-21.  The trust-by-trust standard of proof

"looks way down the road from where we are to the proof that Plaintiff[ ] would need to proffer to

prevail on the merits—not the level of proof necessary to raise a reasonable inference that

Defendant is liable."  *Phoenix Light v. BNYM*, 2015 WL 5710645, at *6.  And courts have declined to

"import a heightened pleading requirement into the RMBS context . . . *at the pleading stage.*"  *Royal*

*Park v. HSBC*, 109 F. Supp. 3d at 601 (emphasis in original).[5]

In its reply brief, BNYM denies attempting to import a heightened pleading standard, stating

that, at a minimum, Royal Park "must allege facts supporting a plausible inference that BNYM knew

of breaches on *some* specific loans, even if Royal Park cannot, before discovery, identify which ones."

Def. Reply at 6 (emphasis in original).  But this argument has been rejected in persuasive fashion by

the other courts that have considered it:  "At the pleading stage, plaintiffs cannot be required to

identify breaches of representations and warranties with respect to the individual loans in the

specific trusts—such information is, at this stage, is uniquely in the possession of defendants.

Rather, plaintiffs satisfy their burden where their allegations 'raise a reasonable expectation that

discovery will reveal evidence' proving their claim."  *PABF v. BoA*, 943 F. Supp. 2d at 442 (citations

omitted); *see also Royal Park v. Deutsche Bank*, 2016 WL 439020, at *6; *Fixed Income Shares: Series M v.*

*Citibank N.A.*, No. 14-CV-9373 (JMF), 2015 WL 5244707, at *9 (S.D.N.Y. Sept. 8, 2015)

(concluding that plaintiff need only plead "factual content that allows the court to draw the *reasonable*

*inference*" that defendant breached R&Ws with respect to the trusts at issue).  BNYM's reliance on

---

[5] In addition to *Retirement Board*, BNYM points to *ACE Securities Corp. Home Equity Loan Trust, Series*
*2007-HE3 v. DB Structured Products, Inc.*, 5 F. Supp. 3d 543 (S.D.N.Y. 2014), as authority supporting the "loan-
by-loan and trust-by-trust" burden of proof.  Def. Br. at 11.  While it is true that in that decision, Judge
Nathan concluded that plaintiff carries the "burden of proving loan-by-loan breaches," she also determined
that this burden will rest on plaintiff "at later stages of litigation," and not at the motion to dismiss stage.
5 F. Supp. 3d at 560.

*U.S. Bank Nat. Association v. Citigroup Global Markets Realty Corp.*, No. 13 CIV. 6989 GBD, 2014 WL 7714382, at *7 (S.D.N.Y. Nov. 14, 2014) is similarly unavailing. The conclusory allegations contained in the complaint in that case fall short of the detailed narrative Royal Park has put forth in the FAC.

The FAC is replete with allegations from which the Court can reasonably infer that BNYM discovered and had actual knowledge of R&Ws breaches. Among other things, Royal Park points to the "historically unprecedented default rates," and specifically to the fact that "[a]ll of the Covered Trusts had Mortgage Loan default rates in excess of 30%, with four of the five Covered Trusts having default rates in excess of 36%, and one Covered Trust having a ridiculously high Mortgage Loan Default rates in excess of 55%." FAC ¶ 78. By 2009, the concomitant cumulative realized loss of the trusts at issue was nearly $190 million. *Id.* In addition, in a detailed summary appended to the FAC, Royal Park alleges that extensive media coverage and news stories revealed that the loan sellers and originators "to nearly all the Covered Trusts had engaged in, or were accused of engaging in, widespread lending misconduct." *Id.* ¶ 76; *see also id.* App'x 1. Virtually every paragraph in the appendix identifies the direct or indirect relationship of the event described with one or more of the trusts at issue. *Id.* App'x 1. Royal Park also alleged that government-issued reports concerning systematic abandonment of underwriting guidelines specifically identified not only the trusts at issue but also BNYM. *Id.* ¶¶ 80-104. The FAC contains allegations that RMBS lawsuits involving the trusts at issue were filed in various jurisdictions around the country, and that the complaints in those lawsuits included allegations that would qualify as breaches of R&Ws. *Id.* ¶ 105-106. Finally, Royal Park alleges that BNYM learned of loan sellers' R&Ws breaches concerning the trusts at issue from borrower bankruptcy actions. *Id.* ¶ 107. Specifically, Royal Park alleges that BNYM "was aware of this information since it made appearances in, monitored and/or made claims or filed or defended actions in the bankruptcies by or against Mortgage Loan borrowers." *Id.*

Accordingly, the Court joins the chorus of judges in this district evaluating similar pleadings and concludes that Royal Park has met, if not exceeded its Rule 8 burden, and that "[t]he low bar at the motion to dismiss stage salvages [Royal Park's] claims for now." *Phoenix Light v. BNYM*, 2015 WL 5710645, at *4; *see also Royal Park v. Deutsche Bank*, 2016 WL 439020, at *6 (finding that nearly identical allegations "'allow[ ] the court to draw the reasonable inference' that R&Ws were breached on a loan-by-loan basis") (quoting *Iqbal*, 556 U.S. at 678). "Indeed, it would be *im*plausible to assume that somehow all of the mortgage loans underlying the [Trusts] miraculously avoided the pervasive practices of the industry at the time." *Royal Park v. Deutsche Bank*, 2016 WL 439020, at *6 (quoting *Fixed Income Shares*, 2015 WL 5244707, at *10). Because Royal Park pleaded sufficient facts to support its allegations that BNYM discovered and had actual knowledge of R&Ws breaches, BNYM's motion to dismiss Royal Park's breach of contract claim on this ground is denied.

### 2. Actual Knowledge of Servicer Events of Default

Beyond the allegations concerning breaches of R&Ws, Royal Park also alleges that BNYM breached its obligations under the Governing Agreements when it failed to act as a "prudent person" once it had actual knowledge of servicer events of default. FAC ¶¶ 116-54. As alleged in the FAC, the Governing Agreements define an "event of default" as any time a "Master Servicer or Servicer . . . fails to ensure the Mortgage Loans are being legally, prudently and properly serviced. The Master Servicers/Servicers also commit an Event of Default whenever they discover breaches of the Warrantors' R&Ws and fail to promptly give notice of those breaches to" BNYM. *Id.* ¶ 11. The Governing Agreements detail additional obligations on behalf of the trustee once it becomes aware of the occurrence of an event of default. *Id.* ¶¶ 11-13.

BNYM claims that the heightened duties associated with its obligations in such circumstances are triggered only by actual knowledge of the occurrence of an event of default and that this knowledge must be "*trust*-specific." Def. Br. at 18; Def. Reply at 8-11. And, BNYM

argues, because the complaint does not plausibly allege that BNYM knew of such events with respect to the specific trusts at issue, Royal Park has not met its burden under Rule 8 and *Twombly*. Def. Br. at 19-23; Def. Reply at 9-11. The Court disagrees.

As explained above, BNYM's attempt to apply a heightened pleading standard to allegations concerning actual knowledge is inappropriate at this stage. On a motion to dismiss, Royal Park need only plead facts sufficient to show that it is plausible that BNYM knew of servicer events of default. BNYM's argument that Royal Park's reliance on government actions, difficulties in foreclosing mortgage loans, and media coverage about rampant servicing problems is insufficient to plausibly plead actual knowledge is similarly unpersuasive. Other courts in this district have found that similar allegations are sufficient to meet a plaintiff's burden. *See, e.g.*, *Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. at 606 ("Plaintiffs have alleged HSBC was the target of government investigations, prosecutions, and settlements with many of the Servicers to the Trusts for the same alleged improper servicing practices. Plaintiffs also allege HSBC's responsible officers' receipt of written notice from Holders to other RMBS trusts regarding the same servicing violations by the same servicers to the Trusts here. At the pleading stage, however, plaintiffs have met their burden."); *Fixed Income Shares*, 2015 WL 5244707, at *12; *Phoenix Light v. BNYM*, 2015 WL 5710645, at *4 (finding similar allegations as sufficient for plausibly alleging that defendant trustee had actual knowledge of servicer events of default).

As in *Royal Park v. HSBC* and *Fixed Income Shares*, Royal Park relies on allegations concerning (1) news reports and media coverage, congressional testimony, and governmental investigation regarding systematic loan servicing abuses; (2) governmental investigations of specific master servicers and servicers to the trusts at issue; (3) BNYM's involvement in many legal actions in which it was an RMBS trustee in foreclosure actions and bankruptcy proceedings; (4) governmental enforcement actions against many of the specific master servicers and servicers of the trusts at issue;

and (5) widespread delinquencies and staggering losses suffered by the trusts at issue.  *See, e.g.*, FAC ¶¶ 123, 132-33, 139-46, 170, 206.  The Court therefore finds that Royal Park has met its burden.  BNYM's motion to dismiss Royal Park's breach of contract claim is denied on this ground as well.

### B.  Breach of Trust

Separately from its breach of contract claims, Royal Park also asserts a common law breach of trust claim as to the five trusts at issue.  FAC ¶¶ 209-14.  BNYM raises two arguments in its motion to dismiss, neither of which is persuasive.  BNYM argues, first, that a breach of trust claim is duplicative of Royal Park's breach of contract claim and, second, that even if not, Royal Park failed adequately to plead a breach of trust claim.  Def. Br. at 33-34; Def. Reply at 17-18.

### 1.  Duplicative Claims

"Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated."  *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (citing *Clark–Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987)).  A plaintiff may bring both a tort and a contract claim only "[w]here an independent tort duty is present."  *Id.* (citing *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898–99 (2d Cir. 1980); *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 408 (1958)).  Where the "basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative."  *Id.* (citing *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316 (1995)); *see also Royal Park v. Deutsche Bank*, 2016 WL 439020, at *9.

Royal Park's breach of trust claim is based on allegations that BNYM failed to avoid a conflict of interest with Royal Park and the class.  FAC ¶¶ 23-24, 66, 162-66, 209-14.  Conflict of interest allegations are a well-recognized exception to the rule under "'New York common law that

the duties of an indenture trustee are strictly defined and limited to the terms of the indenture.'"
*Royal Park v. Deutsche Bank*, 2016 WL 439020, at *9 (quoting *Elliott Associates v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988)).  Because avoiding a conflict of interest is considered to be an extra-contractual duty, it is not duplicative of Royal Park's breach of contract claim.  *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 191-92 (S.D.N.Y. 2011) (citations omitted); *see also Fixed Income Shares*, 2015 WL 5244707, at *13.

### 2.  Conflict of Interest Allegations

BNYM next challenges whether Royal Park sufficiently alleged the existence of a conflict of interest.  Royal Park's allegations of BNYM's "ongoing business relationship" with loan sellers and servicers, it argues, do not rise to the level of a conflict of interest claim under New York law.  Def. Br. at 33.  But the FAC goes further than that.  In addition to BNYM's "ongoing and prospective business relationship with the loan originators, Warrantors, Master Servicers and Servicers," Royal Park also alleges that BNYM "derived significant RMBS trustee business from such relationships . . . did not want to disrupt" these relationships "by seeking to enforce R&W claims against Warrantors or declaring Events of Default against the Master Servicer/Servicers . . . as it would endanger BNY Mellon's RMBS trustee business and the income derived therefrom, as well as future prospects for such financial gain."  FAC ¶ 20.  According to the FAC, therefore, BNYM advanced its own interest at the expense of Royal Park and the class.  *Id.* ¶ 21.  Several courts in this district have recently held that allegations of this type of "quid pro quo system where Defendant turns a blind eye to breaches of R&Ws in the hopes that counterparties would later 'return a favor,' if true, would demonstrate that the Defendant 'received a[ ] benefit from its decision' not to act on the breaches of R&Ws, constituting a conflict of interest."  *Royal Park v. Deutsche Bank*, 2016 WL 439020, at *9 (quoting *Ellington Credit Fund*, 837 F. Supp. 2d at 193); *see also Royal Park v. HSBC*, 109 F. Supp. 3d at 610. Contrary to BNYM's argument, the allegations in the FAC do not portray "a relationship that exists

by virtue of the trusteeship itself." Def. Br. at 33.  Instead, the allegations suggest that BNYM was "'economically beholden' to those sellers and servicers because it 'faced repurchase liability for the sale and securitization of its own loans' if [the defendant] took action against them." *Fixed Income Shares*, 2015 WL 5244707, at *13 (citations omitted).  For these reasons, BNYM's motion to dismiss the breach of trust claim is denied.

## C.  Trust Indenture Act

BNYM next moves to dismiss Royal Park's TIA claims with respect to the two Indenture Trusts at issue (ECR 2005-2 and GSCC 2006-1), arguing that the TIA does not create an implied private right of action and, even if it did, the complaint fails to state a claim under sections 315(a), 315(b), and 315(c) of the TIA.  The Court will address each argument in turn.

### 1.  Private Right of Action

BNYM argues that the text of the TIA "contains no express [private] right of action," that the TIA's "structure and history confirm that Congress did not intend courts to read a right of action into the Act," and that the legislative history surrounding the TIA does not clearly identify a congressional intent to create a private right of action.  Def. Br. at 23-25.  With respect to section 315(a), BNYM is correct.

Section 315(a) of the TIA states that "the indenture trustee shall not be liable except for the performance of such duties as are specifically set out in such indenture."  15 U.S.C. § 77ooo(a)(1).[6] As district courts in this circuit correctly concluded—and as BNYM notes in its brief—this section limits, rather than creates, liability.  Def. Br. at 27.  This is because "[s]ection 315(a)(1) does not impose any additional duties upon the trustee; it merely requires the indenture to contain language

---

[6] Royal Park's allegations with respect to section 315 are limited to subsection (a)(1).  FAC ¶¶ 196-97. Accordingly, the Court's analysis of whether section 315(a) creates a private right of action is limited to that subsection.

limiting the trustee's duties to those in the indenture." *Royal Park v. HSBC*, 109 F. Supp. 3d at 611.

As such, there is no private right of action under this section and Royal Park's section 315(a) claims

are dismissed. *See id.*; *see also Ret. Bd. of the Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon*, 914 F. Supp. 2d 422, 430 (S.D.N.Y. 2012), *aff'd in part, rev'd in part on other grounds sub nom. PABF v. BNYM*, 775 F.3d 154 (2d Cir. 2014) (dismissing claims brought under section 315(a) of the TIA and holding that the language of that "§ 315(a) limits a trustee's responsibilities to those enumerated in the indenture, rather than imposing additional federal obligations" and that the it does not render "every violation of an indenture is a *per se* violation of the TIA.").

The same is not true with respect to sections 315(b) and 315(c) of the TIA. Section 315(b) requires indenture trustees to "give to the indenture security holders . . . notice of all defaults known to the trustee." 15 U.S.C. § 77ooo(b). Section 315(c) requires the trustee to "exercise in case of default . . . such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs." 15 U.S.C. § 77ooo(c). Thus, unlike section 315(a), sections 315(b) and 315(c) impose affirmative obligations on the trustee.

In its reply brief, BNYM "acknowledge[s] that in the 75 years that the TIA has been on the books, two . . . courts found a private right of action in the TIA."[7] Def. Reply at 11-12. That number has now increased as several courts in this district have found a private right of action to exist under these sections. *See, e.g., Ret. Bd. of the Policemen's Annuity v. The Bank of New York Mellon*, No. 11 CIV. 5459 (WHP), 2015 WL 9275680, at *3 (S.D.N.Y. Dec. 18, 2015); *Fixed Income Shares*, 2015 WL 5244707, at *6. The Court finds Judge Furman's analysis of this issue in *Fixed Income Shares* persuasive and adopts Judge Furman's conclusions here. 2015 WL 5244707, at *4-7; *see also Phoenix*

---

[7] BNYM further notes that these two decisions predate *Alexander v. Sandoval*, 532 U.S. 275 (2001), "which tightened and clarified the rules governing recognition of a private right of action." Def. Br. at 25.

*Light v. BNYM*, 2015 WL 5710645, at \*9 (finding that a private right of action exists under TIA sections 315(b) and 315(c) for the reasons articulated in *Fixed Income Shares*).

### 2. Violation of TIA Sections 315(b) and 315(c)[8]

BNYM's arguments with respect to sections 315(b) and 315(c) can be summarized as follows:  a "default," as that term appears in the TIA and used in the Governing Agreements, refers exclusively to a defined "event of default" and is further limited to *issuer* events of default.  Def. Br. at 28.  Because Royal Park has not plausibly alleged the occurrence of issuer events of default—or that BNYM had knowledge of any such events—BNYM argues that these claims must be dismissed. Def. Br. at 29-33.

As Royal Park explains in its opposition, the ECR Trust 2005-2 indenture's definition of an event of default expressly incorporates the definition of that term from section 6.01 of the Servicing Agreement.  Pl. Opp'n at 30.[9]  According to section 6.01 of the Servicing Agreement, an event of default includes, among other things, failure by the master servicer "to perform in any material respect any other of the covenants or agreements on the part of the Master Servicer contained in [the Servicing] Agreement."  *Id.*; *see also* Leahy Decl. to Pl. Opp'n, Ex. B, § 6.01(ii).  Therefore, even

---

[8] Because the Court concludes that no private right of action exists under section 315(a), it does not address whether Royal Park has plausibly alleged that BNYM violated this section.

[9] The Court notes that both Royal Park and BNYM included additional documents and exhibits with their briefs.  Both parties refer to these documents in their papers, including with respect to how the court should construe the term "default."  *See, e.g.*, Pl. Opp'n at 30; Def. Reply at 15-16.  While a district court may consider materials that are attached to the complaint or incorporated by reference when deciding a motion to dismiss, *see supra* n.1, the same is not true with respect to matters outside the pleading.  When presented with such materials on a motion to dismiss pursuant to Rule 12(b)(6), "'(1) the court may either exclude the additional materials and decide the motion on the complaint alone or (2) it may convert the motion to one for summary judgment under [Rule] 56 and afford all parties the opportunity to present supporting material.'" *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 362 (S.D.N.Y. 2013) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F. 2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(d).  The Court will not convert this motion into one for summary judgment and, therefore, will not consider the additional materials submitted by the parties unless expressly incorporated by reference in the FAC.  *See, e.g.*, FAC ¶ 5 (incorporating by reference all Governing Agreements).

if the term "default" in the TIA referred exclusively to defined "events of default," in this instance, the parties have provided no basis for the Court to conclude that the indenture differentiates between "issuer" and "servicer" events of default.  The defined term "event of default" expressly includes "servicer" events of default.  Because the Court already found that the FAC sufficiently pleads that BNYM had actual knowledge of servicer events of default, BNYM's motion to dismiss is denied on this ground as well.[10],[11]

---

[10] The Court notes that it has not been provided with the complete set of documents pertaining to the GSR Capital Corp. Mortgage Trust 2006-1—the other TIA-qualified trust—from which it might determine whether, as BNYM argues, a default, as that term is defined in the indenture, is limited to an *issuer* event of default.  Accordingly, BNYM's motion to dismiss Royal Park's TIA claims with respect to this trust must be denied.  *See Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012) ("[I]f a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state claim.").

[11] The parties further disagree as to whether the term "default" necessarily means a defined "event of default."  BNYM takes the position that the term is limited to defined "events of default;" Royal Park argues that the term refers more broadly to any default.  Def. Br. at 26-29; Pl. Opp'n at 28-29; Def. Reply at 14-16. The competing interpretations advanced by the parties relate to the difference in the statutory text between sections 315(b) and 315(c).  Under section 315(c), the trustee's obligations are triggered "in case of default (*as such term is defined in such indenture*)."  15 U.S.C. § 77ooo(c) (emphasis added).  Section 315(b), on the other hand, does not include the parenthetical qualifier; under that section, the trustee is required to "give . . . notice of *all* defaults known to the trustee."  15 U.S.C. § 77ooo(b) (emphasis added).  With respect to section 315(c), at least one court in this district concluded that the term "default," as it is used in that section, refers more narrowly to events of default.  *Semi-Tech Litig., LLC v. Bankers Trust Co.*, 353 F. Supp. 2d 460, 480-82 (S.D.N.Y. 2005), *aff'd sub nom. In re Bankers Trust Co.*, 450 F.3d 121 (2d Cir. 2006) (holding that a conclusion that the term means the same thing in each section "would collapse any distinction between 'default' as used in section 315(b), on the one hand, and as used in Section . . . [315](c) on the other"  and "would render superfluous the parenthetical in . . . Section 315(c)—which has been part of the statute since 1939—and thus conflict with the rule against surplusage.").  More recently in *Oklahoma Police Pension & Retirement System v. U.S. Bank National Association*, the district court concluded that "sections 315(b) and (c) of the TIA depend only on a 'default,' not an 'event of default,'" when the indenture defined the term "'default' separately from an 'event of default.'"  291 F.R.D. 47, 67 (S.D.N.Y. 2013) *abrogated on other grounds by PABF v. BNYM*, 775 F.3d 154 (2d Cir. 2014).  The Court recognizes that the application of the term "default" in this case as invoked in sections 315(b) and 315(c) may turn in part on how "such term is defined in such indenture," as any distinction between how the term is used in section 315(b) and section 315(c) may be contractually negated by the parties to that agreement.  Because the Court finds that the FAC sufficiently pleads BNYM's knowledge of events of default, however, the applicable scope of the term "default" as used in sections 315(b) and 315(c) of the TIA is a question for a later date.

### D.  Streit Act

Royal Park also brings a claim under New York's Streit Act, alleging that it is entitled to its protections and that BNYM failed to act as a prudent person once it became aware of events of default.  FAC ¶¶ 217-22.  BNYM moved to dismiss Royal Park's Streit Act claim on three grounds: (1) the Streit Act does not apply to the trusts at issue; (2) the Streit Act does not create a private right of action; and (3) Royal Park has not alleged a violation of the Streit Act.  Def. Br. at 34-37; Def. Reply at 18-20.

#### 1.  The Streit Act Applies to RMBS

BNYM maintains that the Streit Act applies to "mortgage investments," not to "notes secured by, or certificates representing ownership of, pools of [mortgage] *loans*."  Def. Br. at 35. BNYM points to *Prudence Realization Corp. v. Atwell*, which held that the Act does not apply to *collateral* trusts.  35 N.Y.S.2d 1001 (App. Div. 1942), *aff'd*, 290 N.Y. 597 (1943) (per curiam).  In *Prudence*, the New York Appellate Division concluded that the trusts at issue in that case did not fall within the purview of the Streit Act.  *Id.* at 1005.  The court reasoned that the Streit Act applied "only to reorganizations dealing directly with real estate," and the collateral consisted of bonds secured by mortgages, cash, U.S. government obligations, bonds issued by Prudence, and securities constituting legal investments for savings banks and trustees.  *Id.*  By contrast, RMBS are backed exclusively by mortgages.

The Streit Act applies to "real estate mortgages and interests," which it defines as inclusive of "any and all shares and interests . . . in an issue of bonds, notes or other evidence of indebtedness of individuals, partnerships, associations or corporations, held by more than one person and secured by a mortgage or mortgages upon real property."  N.Y. Real Prop. Law §§ 124-25.  RMBS are considered "certificate[s] of interest or participation in two or more securities having substantially different rights and privileges, namely, the numerous mortgage loans held by each trust."  *PABF v.*

*BNYM*, 775 F.3d at 165 (internal quotation marks omitted), *cert. denied sub nom.*, *Ret. Bd. of Policemen's Annuity & Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon*, 136 S. Ct. 796 (2016). Accordingly, and consistent with other decisions in this district, the Streit Act applies to the trusts at issue because the trust assets, the collateral securing the RMBS, consist solely of residential mortgages. *See Royal Park v. HSBC*, 109 F. Supp. 3d at 612 (holding that the Streit Act applies to similar RMBS trusts).

### 2. Violation of the Streit Act

The FAC alleges that BNYM violated section 126 of the Streit Act by:

> [F]ail[ing] to exercise its rights under the Governing Agreements after becoming aware of numerous Events of Default, fail[ing] to act as a prudent person during the Events of Default . . . , fail[ing] to notify Certificate holders and other parties of deficiencies, fail[ing] to take steps to address those deficiencies, and fail[ing] to enforce the repurchase, cure, or substitution of defective Mortgage Loans.

FAC ¶ 221.[12]

> Section 126 of the Streit Act states:

> No trustee shall hereafter *accept a trust under any trust indenture* or mortgage within the contemplation of this article or act as trustee thereunder *unless the instrument creating the trust shall contain the following provisions*, among others, which confer the following powers and impose the following duties upon the trustees.

N.Y. Real Prop. Law § 126 (emphasis added). Subsections 1 through 5 then detail a litany of terms and provisions that must be included in an indenture. N.Y. Real Prop. Law § 126(1)-(5). In other words, as BNYM correctly points out, section 126 identifies the mandatory provisions that must be

---

[12] Although the FAC refers to sections 124 and 125 of the Streit Act as well—and the parties refer to these sections in their briefs—those sections are relevant to the arguments concerning whether a private right of action exists under the Streit Act and whether it applies to RMBS. *See* FAC ¶¶ 216-19; Def. Br. 34-37; Pl. Opp'n at 35-38; Def. Reply at 18-19.

included in an indenture.  *See* Def. Br. at 37.  Section 126 does not, however, independently mandate that a trustee comply with those obligations.

Royal Park cites *Beck v. Manufacturers Hanover Trust Co.*, 218 A.D.2d 1 (1995), in support of its argument that the FAC plausibly alleges violations of the Streit Act.  Royal Park's reliance on that case is inapposite.  If anything, *Beck* confirms that the New York legislature enacted the Streit Act because it recognized that "[s]ubsequent to default, it is usually only the trustee who is able to act swiftly and effectively to assure . . . that the rights of bondholders to recover what they are owed will ultimately be vindicated."  *Id.* at 12.  Therefore, the court reasoned, "[i]t simply does not accord with sound public policy or the ostensible purposes for which an indenture is made and relied upon by its beneficiaries, to allow indenture trustees the benefit of broad exculpatory provisions to excuse their failure to exercise those powers they possess pursuant to the indenture prudently in order to mitigate or obviate the consequences of default."  *Id.*  It was for that reason "that the Legislature almost 60 years ago enacted Real Property Law § 126 requiring indenture trustees appointed in connection with 'mortgage investments' . . . to exercise such of the rights and powers vested in the trustee by such instrument, and to use the same degree of care and skill in their exercise as a prudent man would exercise or use under the circumstances in the conduct of his own affairs."  *Id.* at 13 (quoting N.Y. Real Prop. Law § 126).  Thus, while section 126 outlines duties and obligations that a trustee must undertake, it does not impose those duties; instead, it mandates that those terms be included in the indenture.  Because Royal Park does not allege that such provisions were missing from the indentures or that the provisions did not meet the requirements of section 126, the Court finds that Royal Park has failed to state a claim under section 126 of the Streit Act.  *See Phoenix Light v. BNYM*, 2015 WL 5710645, at *11 (holding that plaintiff has failed to state a claim under section 126 of the Streit Act when the complaint did not allege that defendant "accepted a deficient indenture"); *see also National Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, et al.*, No. 14-cv-9928 (KBF), Dkt. No. 120,

slip op. at 26 (S.D.N.Y. Feb. 25, 2016) (dismissing Streit Act claims where the plaintiff did not "contend that defendants accepted a trust whose trust instrument lacked any material provision."). Accordingly, BNYM's motion to dismiss is granted as to this claim as well.[13]

## IV.   CONCLUSION

For the foregoing reasons, BNYM's motion to dismiss is granted in part and denied in part. BNYM's motion to dismiss is denied with respect to Royal Park's breach of contract, breach of trust, and TIA claims under sections 315(b) and 315(c) of that act.  BNYM's motion to dismiss is granted with respect to Royal Park's Streit Act claim and TIA claim under section 315(a).

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 49.

SO ORDERED.

Dated:  March 2, 2016
New York, New York

GREGORY H. WOODS
United States District Judge

---

[13] Because the Court finds that Royal Park has not plausibly alleged a Streit Act claim, it does not address BNYM's argument that the Streit Act does not create a private right of action.