```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                                :
ROYAL PARK INVESTMENTS SA/NV                                    :
Individually and on Behalf of All Others Similarly Situated,    :
                                                                :
                                            Plaintiffs,         :
                                                                :
                    -v -                                        :
                                                                :
THE BANK OF NEW YORK MELLON                                     :
as Trustee,                                                     :
                                                                :
                                            Defendant.          :
                                                                :
--------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/30/2017

1:14-cv-6502-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

Royal Park Investments SA/NV ("Plaintiff" or "Royal Park") filed this action on behalf of itself and similarly-situated investors against The Bank of New York Mellon ("Defendant" or "BNYM"), which serves as the trustee of the five residential mortgage-backed securities ("RMBS") trusts at issue in this case. In light of the Court's March 2, 2016 decision granting in part and denying in part BNYM's motion to dismiss, Royal Park's remaining claims are for breach of contract, breach of trust, and violations of sections 315(b) and 315(c) of the Trust Indenture Act. Royal Park now seeks to certify a class action to further pursue those claims under Federal Rule of Civil Procedure 23(a) and (b)(3), and to appoint Royal Park's counsel, Robbins Geller Rudman & Dowd LLP, as class counsel. Because the proposed class is not defined using objective criteria that establish a membership with definite boundaries, Royal Park's motion for class certification is DENIED without prejudice.

## I. INTRODUCTION

The Court assumes familiarity with the facts alleged in the complaint and the background of this matter set forth in the Court's March 2, 2016 order granting in part and denying in part

Defendant's motion to dismiss. *See Royal Park Inv. SA/NV v. Bank of New York Mellon*, No. 14-cv-6502 (GHW), 2016 WL 899320 (S.D.N.Y. Mar. 2, 2016) ("March 2 Opinion"). The March 2 Opinion also provided a brief overview of the RMBS market and the manner in which RMBS are constituted. The Court does not repeat this prior recitation of facts and context here but, to aid the reader, a brief overview of the facts relevant to Plaintiff's motion is provided below.

Three of the five RMBS trusts at issue in this case are New York common law trusts; the other two are qualified indenture trusts under the Trust Indenture Act ("TIA"). Am. Compl. (Dkt. No. 46) ¶ 5. The New York common law trusts are governed by "Pooling and Servicing Agreements" ("PSAs"). *Id.* The indenture trusts ("Indenture Trusts") are governed by trust indentures.[1] *Id.* The complaint describes the trust indentures and the PSAs, together with the series of other agreements entered into in connection with the creation of the trusts at issue here, as the "Governing Agreements." *Id.* Among other things, the Governing Agreements contain certain representations and warranties ("R&Ws") by the loan seller, sponsors, trustee, or other transferors, concerning the "credit quality and characteristics" of the mortgage loans as well as "promise[s] to cure, substitute or repurchase" loans that do not comply with the R&Ws. *Id.* ¶ 42.

The Governing Agreements also outline the trustee's duties and can generally be grouped into pre- and post-default duties. As the complaint describes, prior to an event of default, the trustee's duties are largely administrative. For example, the trustee must accept "all the right, title and interest of the Depositor in and to the" the underlying mortgage loans. *Id.* ¶ 50; *see also id.*, Ex. 1 at 8. The trustee must also promptly notify the parties to the agreement when it discovers a breach of the R&Ws and, if the breaching party fails to cure that breach, the trustee has the power to

---

[1] The five trusts are SAMI 2006-AR4, NSTR 2007-C, NHEL 2006-3, GSCC 2006-1, and ECR 2005-2. Am. Compl. ¶ 2. The latter two are Indenture Trusts, which are trusts subject to the TIA. *Id.* ¶¶ 5, 67.

2

enforce the obligations of that party under the Government Agreements. Am. Compl. ¶ 54; *see also id.*, Ex. 1 at 58.

The duties of the trustee increase significantly if the trustee has knowledge of the occurrence of events of default. *Id.* ¶ 64. Thereafter, the trustee must "exercise such of the rights and powers vested in it by [the] Agreement, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs." *Id.*; *see also id.*, Ex. 1 at 117. The complaint describes a series of events, including adverse press, congressional inquiries, and other legal actions, all of which Royal Park claims are sufficient to establish that BNYM knew, at the very least, of the existence of the failure of a servicer to abide by its commitments, triggering an event of default and a heightened duty of care by BNYM. The complaint alleges that BNYM's failure to meet that heightened duty of care, together with its failure to take other actions mandated by the Governing Agreements following the occurrence of an event of default, contributed to more than a billion dollars in losses that Plaintiff sustained in trusts that BNYM administered. *Id.* ¶ 26. Specifically, the complaint alleges that BNYM breached its obligations, as they are described in those agreements, upon discovering that loan sellers had breached their R&Ws and upon obtaining actual knowledge of events of default. *Id.* ¶¶ 51-57, 64-65.

Following the Court's resolution of BNYM's motion to dismiss, Royal Park is left with claims for breach of contract, breach of trust, and violations of sections 315(b) and 315(c) of the TIA. Royal Park now seeks to certify the following class to further pursue those claims:

> All persons and entities who held Certificates in the Covered Trusts and were damaged thereby. Excluded from the class are defendant, the loan originators, the Warrantors, the Master Services and the Servicers to the Covered Trusts, and their officers and directors, their legal representatives, successors or assigns, and any entity in which they have or had a controlling interest.

Plaintiff's Memorandum of Law in Support of its Motion for Class Certification and Appointment

3

of Class Representative and Class Counsel (Dkt. No. 100) ("Pl. Mem.") at 1.

## II. LEGAL STANDARD

"A plaintiff seeking certification of a Rule 23(b)(3) class action bears the burden of satisfying the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as Rule 23(b)(3)'s requirements: (1) that 'the questions of law or fact common to class members predominate over any questions affecting only individual members' (the 'predominance' requirement); and (2) that 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy' (the 'superiority' requirement)." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting Fed. R. Civ. P. 23(a) and (b)(3)); *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (a party seeking class certification under Rule 23(b)(3) "must establish that the four threshold requirements of Rule 23(a) . . . are satisfied" and must also show that Rule 23(b)(3)'s "predominance" and "superiority" requirements are satisfied). In addition to the express requirements of Rule 23, the Second Circuit has recognized an implied requirement that the class be ascertainable, that is, "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras*, 862 F.3d at 264; *see also In re Digital Music Antitrust Litig.*, --- F.R.D. ---, 2017 WL 3037577, at *15 (S.D.N.Y. July 18, 2017).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *see also In re Am. Int'l. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237-38 (2d Cir. 2012) ("The party seeking class certification must affirmatively demonstrate . . . compliance with the Rule, and a district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met.") (citation and internal quotation marks omitted).

**III.    DISCUSSION**

The proposed class is not sufficiently ascertainable.  Because Plaintiff fails to meet its burden with respect to that threshold inquiry, the Court does not evaluate here the remainder of the arguments presented by Defendant in opposition to the motion.  The definition of the proposed class has a significant impact on the Court's analysis of those arguments.  As a result, Plaintiff's motion is denied without prejudice, with leave to file a renewed motion that proposes an appropriately redefined class.

In *Brecher v. Republic of Argentina*, the Second Circuit provided its first affirmative definition of the "implied ascertainability" requirement in Rule 23:

> The touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.  A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case.

806 F.3d 22, 24-25 (2d Cir. 2015) (citations and quotation marks omitted); *see In re Petrobras*, 862 F.3d at 264 ("In *Brecher v. Republic of Argentina*, we offered our first, and thus far, only affirmative definition of the implied ascertainability requirement . . . .").  *Brecher* was one of several cases concerning Argentina's default on between $80 and $100 billion in sovereign debt in 2001.  The district court there had originally certified a class that included a "continuous holder" requirement, under which "the class contained only those individuals who . . . possessed beneficial interests in a particular bond series issued by the Republic of Argentina from the date of the complaint . . . through the date of final judgment in the District Court."  806 F.3d at 23.  Later in the litigation, in connection with assessing damages, the district court "modif[ied] the class definition by removing the continuous holder requirement and expanding the class to all holders of beneficial interests in the relevant bond series without limitation as to time held."  *Id.* at 24.

On appeal from a grant of summary judgment to the plaintiffs, the Second Circuit concluded

5

that class certification was inappropriate without the continuous holder requirement. The court explained that the objective criteria used to define a class must "establish the definite boundaries of a readily identifiable class." *Id.* at 25. The objective standard employed by the district court—"owning a beneficial interest in a bond series without reference to time owned"—was "insufficiently definite to allow ready identification of the class or the persons who will be bound by the judgment." *Id.* This was so because the secondary market for the bonds at issue was "active and ha[d] continued trading" after the commencement of the lawsuit. *Id.* As a result, the court concluded that "the identity of class members will remain fluid even following entry of judgment, since nothing in the new class definition freezes the class composition at any designated time." *Id.* n.3. The court concluded that the class was "insufficiently definite as a matter of law." *Id.* at 26.

In *Petrobras*, the Second Circuit "t[ook] t[he] opportunity to clarify the ascertainability doctrine's substance and purpose." 862 F.3d at 264. Based upon a review of its decision in *Brecher* and of the various inquiries attendant to a court's evaluation of a Rule 23 motion for class certification, the court concluded that "a freestanding administrative feasibility requirement is neither compelled by precedent nor consistent with Rule 23." *Id.* A "heightened" ascertainability requirement would require that "any proposed class must be 'administratively feasible,' over and above the evident requirements that a class be 'definite' and 'defined by objective criteria . . . .'" *Id.*; *see also id.* at 267 ("The heightened ascertainability test, as articulated by the Third Circuit and endorsed by Appellants [requires that] Plaintiffs must provide adequate assurance that there can be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.") (citation and internal quotation marks omitted). Rather, the ascertainability requirement is satisfied if a class is "defined using objective criteria that establish a membership with definite boundaries." *Id.* at 269. The court described ascertainability as a "modest threshold requirement" that precludes certification only if a "proposed class definition is

indeterminate in some fundamental way." *Id.* With respect to the court's earlier decision in *Brecher*, the *Petrobras* court explained that it had "reached [its] decision in *Brecher* by asking whether the class was defined by objective criteria that made the class's membership sufficiently definite, not whether the class was administratively feasible." *Id.* at 266. The court explained that language in *Brecher* regarding "administrative feasibility" and "mini-hearings" was "not strictly part of the holding." *Id.* at 266. Rather than "creat[ing] an independent element of the ascertainability test . . . that language conveyed the *purpose* underlying the operative requirements of definiteness and objectivity." *Id.* "That is," the court explained "a class must be 'sufficiently definite *so that* it is administratively feasible for the court to determine whether a particular individual is a member'; a class must be 'defined by objective criteria' *so that* it will not be necessary to hold 'a mini-hearing on the merits of each case.'" *Id.* at 266-67 (citations omitted).

*Petrobras* clarified that the implied requirement of ascertainability in Rule 23 does not include a "freestanding administrative feasibility requirement." However, the court there reaffirmed a concept underlying the holding in *Brecher*, namely that in order to be ascertainable, a class must be defined "using objective criteria that establish a membership with definite boundaries." *Id.* at 269; *see also Hughes v. Ester C. Co.*, --- F.R.D. ---, 2017 WL 3129767, at *4 (E.D.N.Y. July 21, 2017) (ascertainability element requires that a class be defined "using objective criteria that establish a membership with definite boundaries").

The class proposed by Royal Park in this case is not so defined. As Judge Nathan observed in denying class certification to Royal Park in a recent case pursuing similar claims in which the proposed class definition was identical to the one proposed here, the "proposed definition lacks an expressly defined class period and, indeed, any meaningful temporal limitation at all, as it includes on its face '[a]ll persons and entities who held Certificates in the [Trusts],' without reference to a fixed date, a window of acquisition, or length or continuity of ownership." *Royal Park Inv. SA/NV v.*

*Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-4394 (AJN), 2017 WL 1331288, at *5 (S.D.N.Y. Mar. 21, 2017) ("*Deutsche Bank*") (citing *Brecher*, 806 F.3d at 25). As discussed above, the Second Circuit in *Brecher* held that the objective standard of "owning a beneficial interest in a bond series without reference to time owned" was "insufficiently definite to allow ready identification of the class or the persons who will be bound by the judgment" in light of the active secondary market for Argentine bonds. *Brecher*, 806 F.3d at 25. The Court understands that, like the bonds at issue in *Brecher*, there is an active secondary market for Certificates in the Covered Trusts. *See, e.g.*, Declaration of Christopher Wood in Support of its Motion for Class Certification and Appointment of Class Representative and Class Counsel (Dkt. No. 101), Ex. A, Expert Report of W. Scott Dalrymple, CFA ¶ 38 ("[I]nvestors in RMBS offerings such as the Covered Trusts include both institutions and individuals. These investors acquire their securities either at offering or in the secondary market."); Am. Compl. ¶ 31 (noting that Royal Park itself acquired certain Certificates in the Covered Trusts in the secondary market). Thus, as in *Brecher*, the "ever-changing composition of the membership would make determining the identity" of class members "impossible" without any "limitation on time or context." *Brecher*, 806 F.3d at 25.

As in *Deutsche Bank*, Plaintiff concedes here that under *Brecher*, "a class definition ordinarily should have temporal limitations." Plaintiff's Reply in Support of its Motion for Class Certification and Appointment of Class Representative and Counsel (Dkt. No. 110) at 3. Plaintiff argues, however, that "[i]n contrast to *Brecher*, the Class here, includes certificateholders who '*held*' the certificates, avoiding *Brecher*'s fundamental problem of an 'ever-changing composition' of the class." *Id.* (citing *Brecher*, 806 F.3d at 25) (emphasis in original). The Court disagrees. As Judge Nathan pointed out, *Brecher* considered the defined class to include "holders of beneficial interests" as opposed to "persons and entities who held Certificates." *Deutsche Bank*, 2017 WL 1331288, at *5. To be sure, therefore, one of the concerns at issue in *Brecher* "was, in a sense, prospective: that

8

under the definition at issue, proposed class members would 'remain fluid even following entry of judgment, since nothing in the new class definition freezes the class composition at any designated time.'" *Id.* (quoting *Brecher*, 806 F.3d at 25 n.3). But as Judge Nathan insightfully reasoned, "without any fixed point of reference, the word 'held' (as used by Royal Park here) is only slightly less indeterminate than the world 'hold,' and thus does little by itself to ameliorate the concern articulated by the *Brecher* court." *Id.* The remainder of Judge Nathan's reasoning on this issue, which the Court finds persuasive, bears repeating:

> [T]he class of persons and entities who 'held' Certificates at some unspecified point in the past may well vary depending upon whether one's vantage point is, for example, the date the class is proposed; the date the class is certified; the date that class notice is disseminated; the date a liability judgment is entered; or the date any necessary claims processing procedure commences. In addition, Royal Park's use of—and emphasis on—the word 'held' invites the independent, though related, question of whether it seeks to *exclude* from the class definition those who *currently hold* Certificates. While the Court strongly suspects that Royal Park intends no such interpretation of its proposal, the ambiguity only underscores the insufficiency—particularly in light of *Brecher*—of using a past tense verb, without more, as the class definition's sole purported temporal constraint.

*Id.* Given the lack of a temporal constraint on the proposed class definition, the Court concludes that the proposed class cannot be certified because it is not "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras*, 862 F.3d at 269.

Lacking any temporal constraint, the proposed class definition contains no alternative connection between any loss suffered by a certificate holder and the alleged misconduct by Defendant. The proposed class includes all people who held certificates at any time "and were damaged thereby." "In the securities law context, courts have approved certification of classes defined as investors who purchased the subject security during a particular period and 'who were damaged thereby.'" 1 McLaughlin on Class Actions § 4:2 (13th ed. 2016).[2] While this is not a

---

[2] Here, the word "thereby" in the proposed class refers either to "held" or "the certificates." So the class is defined to include anyone who held the certificates at any time. In other class definitions incorporating this

9

securities law action, as Judge Nathan noted in *Deutsche Bank*, when a certificate holder acquired or sold its interests in its certificates will have an impact on whether or not it has a claim in this case. For example, some certificate holders may have acquired an interest in the certificates and transferred them for a loss before the alleged violations by Defendant; at the other extreme, some certificate holders may have acquired interests in certificates after the commencement of this action and sold them for a loss before class certification. Both of those groups would be included in the class proposed by Plaintiff, despite the likelihood that any losses resulting from their ownership of the certificates were untethered to any alleged misconduct by Defendant.

The denial of class certification is without prejudice, however, inasmuch as "'reformation of the class definition, if possible,' is usually deemed the 'appropriate response'" where a proposed class is inappropriately defined. *Deutsche Bank*, 2017 WL 1331288, at *9 (quoting *In re Libor-Based Fin. Instruments Antitrust Litig.*, 11-mdl-2262, (NRB), 2016 WL 2851333, at *2 (S.D.N.Y. May 13, 2016)); *see also Cokely v. N.Y. Conv. Ctr. Op. Corp.*, No. 00-cv-4637 (CBM), 2004 WL 1152531, at *2 n.3 (S.D.N.Y. May 21, 2004) ("The court . . . may allow plaintiff to amend in order to limit the class.") (quoting 7A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Proc.* § 1759 (3d ed. 2005)). "The Court recognizes that, under Federal Rule of Civil Procedure 23(c), it 'has authority *sua sponte* to modify a proposed class definition.'" *Deutsche Bank*, 2017 WL 1331288, at *9 (quoting *Ruzhinskaya v. Healthport Techs, LLC*, 311 F.R.D. 87, 108-09 (S.D.N.Y. 2015)). However, the Court believes that it is appropriate to permit Plaintiff to propose an alternative construction in the first instance.[3]

---

common phrase, "thereby" refers much more specifically to damage caused by the acquisition or sale of an asset within a specified period. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 472 (S.D.N.Y. 2009) ("[A]ll Persons who purchased or otherwise acquired any of the Subject Securities at issue in such case during the Settlement Class Period applicable to such action *and were damaged thereby*." (emphasis in original))

[3] *Deutsche Bank* was decided before the Second Circuit's decision in *Petrobras*. In *Deutsche Bank*, Judge Nathan discussed a number of additional concerns related to the administrative feasibility of the proposed class in that case, in particular the "complexity of the ownership chain," which, given the nature of the claims

**IV.     CONCLUSION**

For the reasons stated above, Royal Park's motion for class certification is denied without prejudice.  Any renewed motion should be filed within 45 days of the date of this order.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 99.

SO ORDERED.

Dated: August 30, 2017
       New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

asserted in that case was exacerbated by the need to determine whether each person who has acquired an interest in a certificate also has standing to bring its claims.  *Deutsche Bank*, 2017 WL 1331288, at *6-7.  The Court does not need to reach those issues in this opinion, but the concerns identified by Judge Nathan have resonance in this case.  The Court hopes that any motion practice in support of a refined class definition will specifically address the concerns related to the administrative feasibility of the proposed class identified by Judge Nathan in *Deutsche Bank*.