UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
ROYAL PARK INVESTMENTS SA/NV,                 :   Civil Action No. 14-cv-06502-GHW
Individually and on Behalf of All Others       :
Similarly Situated,                            :
                                               :   CLASS ACTION
                                               :
                        Plaintiff,             :
                                               :   PLAINTIFF'S MEMORANDUM OF LAW
                                               :   IN SUPPORT OF ITS RENEWED MOTION
            vs.                                :   FOR CLASS CERTIFICATION AND
                                               :   APPOINTMENT OF CLASS
THE BANK OF NEW YORK MELLON, as                :   REPRESENTATIVE AND CLASS
Trustee,                                       :   COUNSEL
                                               :
                        Defendant.             :
                                               :
———————————————————— x


# [REDACTED]

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ..................................................................................1

II.  STATEMENT OF FACTS ....................................................................................2

    A.  BNYM's Breaches of Contract and Duty of Trust .................................................3

III.  ARGUMENT ....................................................................................................5

    A.  This Case Satisfies the Requirements of Rule 23(a).............................................5

        1.  The Class Is Numerous ...................................................................5

        2.  There Are Questions of Law and Fact Common to the Class......................6

        3.  Plaintiff's Claims Are Typical of the Class ..........................................8

        4.  Plaintiff Is Adequate ......................................................................9

    B.  The Requirements of Rule 23(b)(3) Are Also Satisfied .......................................11

        1.  Common Questions of Law and Fact Predominate ...............................11

        2.  Concerns Regarding Administrative Feasibility Do Not Undermine Predominance.............................................................................17

            a.  Class Members Can Be Identified Through Trading Data ............19

            b.  Class Members Are Identifiable Through a Claims Process .........20

            c.  Potential Assignment of Claims Is Irrelevant ...............................21

        3.  A Class Action Is Superior .............................................................22

    C.  The Court Should Appoint Plaintiff's Counsel as Class Counsel..........................23

    D.  The Proposed Class Is Ascertainable ...............................................................24

IV.  CONCLUSION..................................................................................................25

1318617_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allapattah Servs. v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003), *aff'd*,
    545 U.S. 546 (2005)..................................................................................13

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan*
    *Chase Bank, N.A.*,
    269 F.R.D. 340 (S.D.N.Y. 2010) ...................................................1, 7, 22, 23

*Billhofer v. Flamel Techs., S.A.*,
    281 F.R.D. 150 (S.D.N.Y. 2012) ...........................................................23

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017), *cert. denied*,
    No. 16-1221, 2017 U.S. LEXIS 6249
    (Oct. 10, 2017) ...............................................................................19

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010)......................................................................5

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
    *Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)......................................................................5

*Dodona I, LLC v. Goldman, Sachs & Co.*,
    296 F.R.D. 261 (S.D.N.Y. 2014) .......................................................6, 7, 8, 16

*Dover v. British Airways, PLC (UK)*,
    No. 12 CV 5567 (RJD) (CLP), 2017 U.S. Dist. LEXIS 51530
    (E.D.N.Y. Mar. 31, 2017) .................................................................18

*Dunnigan v. Metro. Life Ins. Co.*,
    214 F.R.D. 125 (S.D.N.Y. 2003) ...........................................................18

*Ebin v. Kangadis Food, Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ...........................................................19

*Farey-Jones v. Buckingham*,
    132 F. Supp. 2d 92 (E.D.N.Y. 2001) ...........................................................21

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11 Civ. 8405 (CM), 2013 U.S. Dist. LEXIS 99959
    (S.D.N.Y. July 12, 2013) .............................................................1, 7, 8, 12

1318617_1

**Page**

*Fogarazzo v. Lehman Bros.*,
  263 F.R.D. 90 (S.D.N.Y. 2009) ....................................................................................5

*Freeland v. Iridium World Commc'ns, Ltd.*,
  233 F.R.D. 40 (D.D.C. 2006)......................................................................................19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918
  (S.D.N.Y. July 27, 2007) ............................................................................................22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)......................................................................................8, 10

*In re IndyMac Mortg.-Backed Sec. Litig.*,
  286 F.R.D. 226 (S.D.N.Y. 2012) .......................................................................... *passim*

*In re Lidoderm Antitrust Litig.*,
  No. 14-md-02521-WHO, 2017 U.S. Dist. LEXIS 24097
  (N.D. Cal. Feb. 21, 2017)................................................................................18, 20, 21

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017).................................................................................. *passim*

*In re US Foodserv. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013).................................................................................. *passim*

*In re US Foodserv. Pricing Litig.*,
  No. 3:07-md-1894 (CFD), 2011 U.S. Dist. LEXIS 138238
  (D. Conn. Nov. 29, 2011), *aff'd*,
  729 F.3d 108 (2d Cir. 2013)........................................................................................7

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001)........................................................................................19

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012) ..................................................................................18

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ...............................................................................6, 8

*Jacob v. Duane Reade, Inc.*,
  293 F.R.D. 578 (S.D.N.Y. 2013), *aff'd*,
  602 F. App'x 3 (2d Cir. 2015) ....................................................................................17

- iii -

Page

*Kalkstein v. Collecto, Inc.*,
   304 F.R.D. 114 (E.D.N.Y. 2015) ........................................................................10

*Kottler v. Deutsche Bank AG*,
   No. 05 Civ. 7773 (PAC), 2010 U.S. Dist. LEXIS 30590
   (S.D.N.Y. Mar. 29, 2010) ..................................................................................8

*Kurtz v. Kimberly-Clark Corp.*,
   No. 14-CV-114214, 2017 U.S. Dist. LEXIS 44576
   (E.D.N.Y. Mar. 27, 2017) ...........................................................................18, 20

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ......................................................................16

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ...............................................................................6

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326
   (S.D.N.Y. Mar. 17, 2014) .........................................................................9, 11, 15

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   No. 08 CV 8781 (HB), 2013 U.S. Dist. LEXIS 180913
   (S.D.N.Y. Dec. 27, 2013) ..................................................................................6

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)...............................................................................14

*Policemen's Annuity & Benefit Fund v. Bank of Am., N.A.*,
   No. 1:12-CV-02865-KBF, 2015 U.S. Dist. LEXIS 177151
   (S.D.N.Y. Mar. 16, 2015) ...................................................................................9

*Ret. Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014) .................................................................. *passim*

*Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ................................................................... *passim*

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)...............................................................................16

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)..............................................................................6, 8

*Seekamp v. It's Huge, Inc.*,
   No. 1:09-CV-00018, 2012 U.S. Dist. LEXIS 33295
   (N.D.N.Y. Mar. 13, 2012) .................................................................................1, 7, 22

*Sgalambo v. McKenzie*,
   268 F.R.D. 170 (S.D.N.Y. 2010) ......................................................................23

*Tyson Foods, Inc. v. Bouaphakeo*,
   __ U.S. __, 136 S. Ct. 1036 (2016) ..................................................................12

*UFCW Local 1776 v. Eli Lilly & Co.*,
   620 F.3d 121 (2d Cir. 2010) .............................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................7

*Wallace v. Intralinks*,
   302 F.R.D. 310 (S.D.N.Y. 2014) ........................................................................9

*Wu v. Pearson Educ., Inc.*,
   277 F.R.D. 255 (S.D.N.Y. 2011) ......................................................................13

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 23 ...................................................................................................1, 5, 25
   Rule 23(a) ............................................................................................................5
   Rule 23(a)(1) .......................................................................................................5
   Rule 23(a)(2) .......................................................................................................6
   Rule 23(a)(3) .......................................................................................................8
   Rule 23(a)(4) ...........................................................................................9, 11, 24
   Rule 23(b) ............................................................................................................5
   Rule 23(b)(3) ...........................................................................................*passim*
   Rule 23(c)(4) ............................................................................................16, 17
   Rule 23(g) ..........................................................................................................24
   Rule 23(g)(1)(A) ...............................................................................................23
   Rule 23(g)(4) .....................................................................................................23

New York General Obligations Law
   §13-101 ..............................................................................................................21

17 C.F.R.
   §240.10b-5 .........................................................................................................21

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), plaintiff Royal Park Investments

SA/NV ("plaintiff" or "Royal Park") moves the Court to certify the following Class:

> All persons and entities who held Certificates in the Covered Trusts at any time between the date of issuance to no later than 60 days after notice of class certification and opportunity to opt out is issued and were damaged as a result of The Bank of New York Mellon's conduct alleged in the Complaint.[1] Excluded from the Class are defendant, the loan originators, the Warrantors, the Master Servicers and the Servicers to the Covered Trusts, and their officers and directors, their legal representatives, successors or assigns, and any entity in which they have or had a controlling interest.[2]

## I.    PRELIMINARY STATEMENT

Plaintiff's three causes of action are ideally suited for class certification pursuant to Rule 23.

Courts in the Second Circuit recognize that cases alleging breach of contract and trust are readily

amenable to class certification and resolution.[3]  This case is no different.  Defendant The Bank of

New York Mellon ("defendant" or "BNYM"), as trustee for the Covered Trusts, assumed

substantially identical duties under the Governing Agreements[4] for each of the Covered Trusts and

breached those duties in a substantially identical manner.  The evidence to date demonstrates that the

Governing Agreements imposed substantially identical obligations on BNYM as trustee, ████████

---

[1]    Following an order by the Court certifying the Class, plaintiff will submit a proposed form and plan of Notice for the Court's approval which will include a specific date by which Notice must be provided to the Class, as well as the specific end-date for the Class Period, which will be calculated from the Notice date.

[2]    The "Covered Trusts" are the residential mortgage-backed securities ("RMBS") identified as: Encore Credit Receivables Trust 2005-2 ("ECR 2005-2"); GSC Capital Corp. Mortgage Trust 2006-1 ("GSCC 2006-1"); NovaStar Mortgage Funding Trust, Series 2006-3 ("NHEL 2006-3"); Nationstar Home Equity Loan Trust 2007-C ("NSTR 2007-C"); and Structured Asset Mortgage Investments II Trust 2006-AR4 ("SAMI 2006-AR4"); *see also* Amended Class Action Complaint and Alternative Verified Derivative Action for Breach of the Trust Indenture Act, Breach of Contract, Breach of Trust and Violation of the Streit Act ("Complaint") (Dkt. No. 46), ¶2.  All paragraph references ("¶__" or "¶¶__") and defined terms contained herein refer to the Complaint unless otherwise noted.  Citations and footnotes are omitted and emphasis is added unless otherwise noted.

[3]    *See, e.g.*, *In re US Foodserv. Pricing Litig.*, 729 F.3d 108, 112, 123-27 (2d Cir. 2013); *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-00018 (LEK/DRH), 2012 U.S. Dist. LEXIS 33295, at *37-*40 (N.D.N.Y. Mar. 13, 2012); *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405 (CM), 2013 U.S. Dist. LEXIS 99959, at *28 (S.D.N.Y. July 12, 2013); *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340 (S.D.N.Y. 2010).

[4]    The "Governing Agreements" consist of Pooling and Servicing Agreements ("PSAs") Trust Agreements ("TAs"), or Indentures and other agreements related thereto, such as the Mortgage Loan Purchase Agreements and Servicing Agreements.

1318617_1

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████ [5]

Plaintiff's case presents numerous common issues of liability that are common to all Class members.

## II. STATEMENT OF FACTS

BNYM is granted certain rights that it is obligated to exercise for the benefit of the Class. ¶¶5-7; Memorandum Opinion and Order ("MTD Order") (Dkt. No. 80) at 3-4.  If BNYM discovers that loans underlying the Covered Trusts (the "Loans") breach one of the representations and warranties ("R&Ws") made by a "Depositor," "Loan Sellers/Sponsors" and/or an originator or Other Transferor of the Loans (*i.e.*, one of the "Warrantors") concerning the Loan's characteristics, BNYM is required to notify the Warrantor of the violation and to enforce the breaching Warrantor's obligation to either substitute or repurchase the defective Loan.  ¶8; MTD Order at 3 ("The trustee must also promptly notify the parties to the agreement when it discovers a breach of the R&Ws and, if the breaching party fails to cure that breach, the trustee has the power to enforce the obligations of that party under the Government Agreements.").

BNYM is also required to protect the Class when it gains actual knowledge of loan servicing failures by the "Master Servicers" or "Servicers"[6] amounting to "Events of Default."  ¶11; MTD Order at 10-11.  An Event of Default occurs whenever a Master Servicer or Servicer (as applicable) fails to ensure the Mortgage Loans are being legally, prudently and properly serviced.  ¶11; MTD Order at 10 ("'The Master Servicers/Servicers also commit an Event of Default whenever they

---

[5]    The fact that this action includes five RMBS trusts is not a bar to certification.  Numerous courts have found that analogous class actions involving multiple RMBS trusts are particularly appropriate for class treatment.  *See, e.g.*, *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116 (S.D.N.Y. 2014) (granting class certification across nine trusts in an RMBS class action); *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226 (S.D.N.Y. 2012) (granting class certification across ten RMBS trusts); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97 (S.D.N.Y. 2011) (granting class certification across 18 RMBS trusts).

[6]    For the Covered Trusts, the Master Servicers and Servicers include: BAC Home Loan Servicing LP; Countrywide Home Loan Servicing LP; ECC Capital Corporation; EMC Mortgage Corporation; Nationstar Mortgage LLC; NovaStar Mortgage, Inc.; Ocwen Loan Servicing LLC; Saxon Mortgage Services; and Wells Fargo Bank, N.A.

discover breaches of the Warrantors' R&Ws and fail to promptly give notice of those breaches to' BNYM.").

The Governing Agreements require BNYM to act promptly to protect the Covered Trusts and the Class once it becomes aware of an Event of Default.  ¶62; MTD Order at 10.  Upon an Event of Default, the Governing Agreements require BNYM to: (1) notify and demand that the offending Master Servicer or Servicer, cure the Event of Default; and (2) give notice of uncured Events of Default to the Class.  *Id.*  If the offending Master Servicer or Servicer does not timely cure the Event of Default, the Governing Agreements give BNYM the power to institute legal action, terminate the offending Master Servicer or Servicer, or take over its servicing duties.  ¶62.  The occurrence of an Event of Default also gives rise to a heightened duty requiring BNYM to act as a fiduciary, *i.e.*, as a reasonably prudent person would act with regard to his own property under the circumstances.  *See, e.g.*, ¶¶13, 17, 64; MTD Order at 4 ("The duties of the trustee increase significantly if the trustee has knowledge of the occurrence of events of default.  Thereafter, the trustee must 'exercise such of the rights and powers vested in it by [the] Agreement, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.'").

### A.     BNYM's Breaches of Contract and Duty of Trust

The Complaint alleges that BNYM discovered and had actual knowledge of R&W breaches but failed to act as contractually obligated under the Governing Agreements.  *See, e.g.*, ¶¶168-169; MTD Order at 4-6.  In addition to the litany of news reports, lawsuits, governmental actions and congressional testimony publicizing the widespread lending failures by the Warrantors, the disastrous performance of the Loans and astoundingly high delinquency rates caused BNYM to discover R&W breaches.  *See generally* ¶¶74-115; MTD Order at 4, 6-10. ████████████

- 3 -



. Ex. 5 at BNYM_RP_00003343.  Despite actual knowledge of

R&W breaches, BNYM failed to take the requisite actions under the Governing Agreements to

protect the Covered Trusts and the Class.

BNYM also obtained actual knowledge that the Master Servicers and Servicers were engaged

in widespread improper and/or illegal foreclosure proceedings and other loan servicing misconduct

with respect to the Loans.  ¶15; MTD Order at 4, 10-12.

Ex. 6 at

BNYM_RP_00280441.  But rather than meeting its obligations under the Governing Agreements,

BNYM acted to preserve its longstanding and lucrative business relationships with the Master

Servicers and Servicers – namely, by ignoring or assisting in conduct leading to the Events of

Default.  *See* ¶¶19-22.  Consequently, defective Loans that breached R&Ws were not replaced,

---

[7]    Declaration of Christopher M. Wood in Support of Plaintiff Royal Park Investments SA/NV's Renewed Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Wood Decl."), Ex. 4 at BNYM_RP_00294378.  Unless otherwise noted, all exhibit references are to the Wood Decl.

repurchased or cured, and Events of Default went unchecked, in violation of the Governing Agreements. *See, e.g.*, ¶¶24-26. The Class has suffered significant damages as a result BNYM's common failures. *See, e.g.*, ¶¶175-180.

## III.   ARGUMENT

Plaintiff's allegations present a predominant question of liability that is susceptible to common proof – whether BNYM's course of conduct breached the Governing Agreements. The predominance of common issues, and the impracticability of bringing individual actions to redress BNYM's wrongful conduct, renders this case ideally suited for class certification.

Pursuant to Rule 23, class certification requires a two-step analysis. First, a plaintiff must show that all four of the prerequisites of Rule 23(a) are satisfied: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P. 23(a); *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010). Second, a plaintiff must demonstrate that the action satisfies at least one of the subcategories of Rule 23(b). In this action, plaintiff seeks certification under Rule 23(b)(3), which requires a showing that: (i) common questions of fact and law predominate over any individual questions; and (ii) a class action is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Each of the Rule 23(a) and (b)(3) requirements is met.

### A.   This Case Satisfies the Requirements of Rule 23(a)

#### 1.   The Class Is Numerous

A class is properly certified where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible; joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504

- 5 -

F.3d 229, 244-45 (2d Cir. 2007)).  The precise quantification or identification of potential class members is unnecessary at class certification "'because a court may make common sense assumptions regarding numerosity.'"  *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007).  Numerosity is presumptively satisfied where there are 40 or more class members. *See J.P. Morgan*, 301 F.R.D. at 131.  Numerosity is satisfied even where putative class members purchased across multiple RMBS offerings.  *See id.* ("'decisions in this district have concluded that a class may be certified even where certain sub-groups of that class do not meet the presumptive 40-member requirement'") (quoting *IndyMac*, 286 F.R.D. at 232); *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 266 (S.D.N.Y. 2014); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781 (HB), 2013 U.S. Dist. LEXIS 180913, at *17-*18 (S.D.N.Y. Dec. 27, 2013).

Employing a conservative method of counting investors, plaintiff's expert has determined that there are at least 326 potential Class members in the Covered Trusts. Ex. 7, ¶47.  Accordingly, the proposed Class clearly satisfies the numerosity requirement.  Further, investors in the Covered Trusts are geographically dispersed institutions and individuals with a wide range of investment amounts, from less than $100,000 to tens of millions of dollars. Ex. 7, ¶48; *see also Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions [and] geographic dispersion of class members . . . .").  The joinder of these investors would be impractical.  *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 105.

## 2.    There Are Questions of Law and Fact Common to the Class

The "commonality" requirement prescribes that a plaintiff show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This requirement is construed liberally, and courts demand only that the plaintiff's and class members' claims "share a common question of law or of fact." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  The "commonality"

- 6 -

requirement is a "'low hurdle.'" *Dodona I*, 296 F.R.D. at 267. The Supreme Court held that "'"[e]ven a single [common] question"'" will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). A question is common if its answer will resolve an issue relevant to the claims on a class-wide basis "in one stroke" (*id.* at 350), regardless of whether it will "overshadow potential individual issues." *In re US Foodserv. Pricing Litig.*, No. 3:07-md-1894 (CFD), 2011 U.S. Dist. LEXIS 138238, at *24 (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir. 2013).

Courts find that commonality is satisfied in cases where a defendant has: (a) breached a fiduciary duty it owed to a particular group (*see, e.g.*, *AFTRA*, 269 F.R.D. at 348); (b) breached an obligation in a form contract (*see, e.g.*, *US Foodserv.*, 729 F.3d at 123-27; *Seekamp*, 2012 U.S. Dist. LEXIS 33295, at *37-*40; *Fleisher*, 2013 U.S. Dist. LEXIS 99959, at *28); *or* (c) made a statement in RMBS documents that is untrue in light of a common course of conduct (*see, e.g.*, *J.P. Morgan*, 301 F.R.D. at 116; *IndyMac*, 286 F.R.D. at 233-35; *Merrill Lynch*, 277 F.R.D. at 106).

Commonality is satisfied in light of the liability issues to be answered and the evidence obtained to date. Plaintiff alleges that BNYM breached identical or substantially identical contractual terms to which all Class members were beneficiaries and that such breaches gave rise to both contractual and common-law claims. *See, e.g.*, ¶¶5, 48. The Governing Agreements for the Covered Trusts contain substantially identical terms. Ex. 7, ¶¶21-23, 25-28, Attachment 1, Attachment 2. The Complaint alleges, and the evidence confirms, that ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████. *See, e.g.*, §III.B.1., *infra*. Each Class member must answer the same common questions in order to prove her claims, including: (i) whether BNYM discovered that the Loans breached R&Ws; (ii) whether BNYM had knowledge of Events of Default; (iii) whether BNYM violated its duties by failing to declare Events of Default and enforce the R&Ws rights; and

- 7 -

(iv) whether Class members were damaged as a result of BNYM's conduct.  Commonality's "'low hurdle'" is easily cleared.  *Dodona I*, 296 F.R.D. at 267.

### 3.      Plaintiff's Claims Are Typical of the Class

Rule 23(a)(3)'s "typicality" requirement is satisfied where a plaintiff's claims are typical of the proposed Class.  *See* Fed. R. Civ. P. 23(a)(3); *Vivendi*, 242 F.R.D. at 84-85.  Typicality is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux*, 987 F.2d at 936-37; *Kottler v. Deutsche Bank AG*, No. 05 Civ. 7773 (PAC), 2010 U.S. Dist. LEXIS 30590, at *6 (S.D.N.Y. Mar. 29, 2010) ("The focus of the typicality inquiry is not on the plaintiffs' behavior, but rather on the defendant's actions."); *see also Fleisher*, 2013 U.S. Dist. LEXIS 99959, at *35; *Merrill Lynch*, 277 F.R.D. at 106.  Typicality "'does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'"  *Dodona I*, 296 F.R.D. at 267.

Plaintiff's claims here arise from the same course of events as do the other Class members' claims.  *See, e.g.*, §III.A.2., *supra*. ███████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████. *Id.*

Indeed, plaintiff and the Class allege that BNYM breached the same contractual and common law duties it owed to all Class members under the Governing Agreements for each Covered Trust.

- 8 -

That is, the course of conduct that gives rise to each Class member's claims is identical – BNYM repeatedly failed to (i) give notice to each Covered Trust's Master Servicer or Servicer of its failure to fulfill its obligations; (ii) declare Events of Default when it knew they had occurred; and (iii) take any action regarding Loans that breached their R&Ws.  Multiple courts have found the typicality requirement satisfied under similar circumstances, including against an RMBS trustee.  *See, e.g.*, *Policemen's Annuity & Benefit Fund v. Bank of Am., N.A.*, No. 1:12-CV-02865-KBF, 2015 U.S. Dist. LEXIS 177151 (S.D.N.Y. Mar. 16, 2015) (approving settlement class against RMBS trustee); *U.S. Foodserv.*, 729 F.3d at 125-26 (certifying breach of contract claim class where underlying contracts varied); *Merrill Lynch*, 277 F.R.D. at 106-09 (recognizing that "as a global matter, Plaintiffs are not required, in proving typicality, to show that the situations of the named representatives and the class members are identical").  Typicality is satisfied where, as here, "[t]he claims of the class members arise from the same course of events," *i.e.*, BNYM's failure to fulfill its obligations owed to all Class members.  *J.P. Morgan*, 301 F.R.D. at 132.

### 4.    Plaintiff Is Adequate

"Rule 23(a)(4) requires a showing that the class representative will fairly and adequately protect the interests of other class members. . . .  [A] finding of typicality usually suggests that the class representative will also satisfy the adequacy requirement."  *Wallace v. Intralinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014).  "The adequacy requirement is not demanding."  *Id.*  "'[A]dequacy of representation entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326, at *18 (S.D.N.Y. Mar. 17, 2014).  "[T]o

defeat . . . certification [any conflict of interest] 'must be fundamental.'" *Flag Telecom*, 574 F.3d at 35.

Royal Park is a limited liability company created by the Belgian State, Ageas and BNP Paribas for the purpose of acquiring and managing a portion of Fortis Bank SA/NV's structured credit portfolio, which included interests in the Certificates at issue here (*i.e.*, the "legacy portfolio"). *See* ¶29; *see also* Dkt. No. 101-3, ¶3. Royal Park also acquired RMBS in 2010 that were originally included within collateralized debt obligations ("CDOs") as part of the legacy portfolio. ¶31. The CDOs were liquidated in 2010 and Royal Park acquired certain of the RMBS within the CDOs, along with all rights, title and interest in such RMBS, including the Certificates at issue here. *Id.*

Royal Park's mission is to minimize the downside risk and maximize recoveries on the legacy portfolio. *See* Dkt. No. 101-3, ¶3. Royal Park, like other members of the Class, suffered damages arising from BNYM's conduct in failing to enforce R&W claims and failing to protect investors in the Covered Trusts from loan servicing failures of which it was aware. *See* ¶16. Royal Park's interests are directly aligned with those of Class members – to maximize the amount recovered from BNYM for its failure to fulfill its duties to the Class. *See* Dkt. No. 101-3; *see, e.g.*, *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 121 (E.D.N.Y. 2015) (no conflict of interest between class members and class representative candidate where interests in maximizing class recovery aligned).

Royal Park has taken its obligations to the Class seriously and has acted to protect the interests of the Class. Plaintiff has actively participated in, supervised and monitored the litigation. *See* Dkt. No. 101-3, ¶4. Through its experienced counsel, plaintiff has authorized the investigation of the facts and the filing of the Complaint, defeated BNYM's motion to dismiss, pursued discovery from BNYM and third parties, responded to substantial discovery requested by BNYM and sat for

depositions. *See id.* Royal Park "understands that as class representative, it owes a fiduciary duty to all members of the class and will seek to obtain the largest recovery for the class." Dkt. No. 101-3, ¶6. Royal Park's actions, along with the common interest it shares with the Class in prosecuting this case to a successful resolution, fully satisfy Rule 23(a)(4)'s adequacy standard.

There are no antagonistic interests between plaintiff and the Class; plaintiff "'possess[es] the same interest and suffer[ed] the same injury as the class members.'" *DLJ*, 2014 U.S. Dist. LEXIS 35326, at *18. Plaintiff holds Certificates in each of the Covered Trusts and was damaged as a result of BNYM's failure to comply with its contractual and common-law obligations. Likewise, each Class member acquired and held Certificates in the Covered Trusts, was similarly damaged and shares the common goal of maximizing the amount recovered. *See* ¶¶184-189.

### B.    The Requirements of Rule 23(b)(3) Are Also Satisfied

#### 1.    Common Questions of Law and Fact Predominate

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *US Foodserv.*, 729 F.3d at 118 (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)). This standard "'does not require a plaintiff to show that there are no individual issues.'" *IndyMac*, 286 F.R.D. at 236. Instead, it requires that "'a court's inquiry [be] directed primarily toward whether the issue of liability is common to members of the class.'" *See J.P. Morgan*, 301 F.R.D. at 136 (quoting *IndyMac*, 286 F.R.D. at 236); *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017) (court should ask "'whether the common, aggregation-enabling, issues

- 11 -

in the case are ***more prevalent or important*** than the non-common, aggregation-defeating, individual

issues'") (emphasis in original) (citing *Tyson Foods, Inc. v. Bouaphakeo*, __ U.S. __, 136 S. Ct.

1036, 1045 (2016)).  Here, common questions clearly predominate.

In order to prevail on its breach of contract claims, the Class must demonstrate "'(1) the

existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach by

the defendant, and (4) damages.'"  MTD Order at 5.  The primary common questions the Class must

address will be whether BNYM: (1) failed to enforce R&W breaches; (2) failed to notify Master

Servicers and Servicers of their failures to fulfill their obligations; (3) failed to declare Events of

Default; (4) failed to act as a reasonable person would to protect its own assets; and (5) failed to

notify investors upon learning of breaches and Events of Default.  With respect to the Class' breach

of trust claims, the predominant question will be whether BNYM put its own interests ahead of the

Class when it failed to take the necessary actions despite knowing of Events of Default and R&W

breaches.  These questions will be answered substantially through common proof.

The existence and scope of BNYM's contractual obligations will be established through

common evidence – the substantially identical provisions of the Governing Agreements.  With

respect to these obligations, the requirements imposed on and conduct expected of BNYM is the

same for all of the Covered Trusts and as to all Class members.  *US Foodserv.*, 729 F.3d at 124.

Each of the Covered Trusts' Governing Agreements used substantially identical language to

outline BNYM's duties.  Ex. 7, ¶¶21-23, 25-28, Attachment 1, Attachment 2.  Thus, while there are

several contracts at issue in the action, no individualized inquiries will be necessary.  Under similar

circumstances, courts in this Circuit have found predominance to be satisfied.  *See, e.g.*, *Fleisher*,

2013 U.S. Dist. LEXIS 99959, at *41-*42 ("certification under Rule 23(b)(3) is warranted for claims that involve contracts that . . . contain the same or essentially the same terms").[8]

Common evidence will also be used to demonstrate that BNYM breached its obligations.



: (1) ▮▮▮▮ (Ex. 8 at BNYM_RP_00008558); (2) ▮▮▮▮ (*see, e.g.*, Ex. 9); (3) ▮▮▮▮ (*see, e.g.*, Exs. 9-10); (4) ▮▮▮▮ (Ex. 11 at BNYM_RP_00008572); (5) ▮▮▮▮ (Ex. 12 at BNYM_RP_00008577); (6) ▮▮▮▮ (Ex. 13); (7) ▮▮▮▮ (Ex. 14), ▮▮▮▮ (Ex. 15); (8) ▮▮▮▮ (Ex. 16); (9) ▮▮▮▮ (Ex. 17); and (10) ▮▮▮▮ (Ex. 18).

▮▮▮▮ Ex. 19 at 82:7-15), ▮▮▮▮

---

[8] Even where multiple contracts are at issue, class treatment is nonetheless appropriate so long as the relevant provisions are similar. *Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 265 (S.D.N.Y. 2011); *see also Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005).

1318617_1



*Id.* at 150:8-16) and

*Id.* at 84:7-15).

. *Compare* Ex. 20, *with* Ex. 21.

Ex. 19 at 16:7-11

(*id.* at 15:1-6);

(*id.* at 19:5-14);

(*id.* at 20:11-15). Accordingly,

'"[e]ach of the Certificates purchased by the Plaintiffs and the Class were [administered] . . . pursuant to [the] same process by the same Defendants.'" *Merrill Lynch*, 277 F.R.D. at 113. "The alleged flaws common to that process" would "be the subject of common proof." *Id.*

BNYM's conduct,

, will predominate as to each Covered Trust. *See J.P. Morgan*, 301 F.R.D. at 136 (common questions predominate where "[t]he class members' proof of liability will principally require an examination of the [defendant's conduct] pursuant to the same basic process"); *Merrill Lynch*, 277 F.R.D. at 113 (same). BNYM's discovery that a vast number of underlying Loans violated R&Ws made in the Governing Agreements will also be subject to common proof. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 163 (2d Cir. 2012).

- 14 -

For example, the Class will seek to prove that the Loans underlying the Covered Trusts breached the R&Ws through loan re-underwriting.  Courts have regularly found loan re-underwriting to be an appropriate method to answer common questions of whether loans in multiple offerings were originated in breach of stated guidelines.  *See DLJ*, 2014 U.S. Dist. LEXIS 35326, at *30-*31 ("'[I]nformation . . . to the effect that underwriting guidelines were actually followed . . . [is] largely subject to generalized proof.'"); *J.P. Morgan*, 301 F.R.D. at 137 (same).  Common evidence of the Covered Trusts' economic losses, widely disseminated investigative reports of origination, and servicing failures and predatory schemes will all be common to the Class – and will collectively, together with evidence adduced during discovery, demonstrate BNYM's liability.

Finally, each Class member's damages will be measured by a common methodology based on published data with respect to the performance of the Loans and a re-underwriting analysis of the Loans.  With respect to R&W breaches, the impact of BNYM's alleged failure to act can be measured by analyzing the extent to which losses in each Covered Trust were associated with Loans that breached the Warrantor's R&Ws. Ex. 7, ¶¶49-64.  The analysis will include an examination of Loans within a Covered Trust to identify those that were materially and adversely affected by R&W breaches and to determine the extent to which losses on these Loans would have been avoided if BNYM had enforced the Warrantors' obligations to repurchase, replace or cure defective loans.  *Id*. Similar to claims related to BNYM's alleged failure to enforce R&W provisions, the impact of the alleged servicing failures will also involve the analysis of Loans within a Covered Trust to identify Events of Default and to assess the extent to which these resulted in higher losses to the collateral pool.  *Id*.  The damage calculations are formulaic, such that each Class member's damages calculation is performed in the same manner.  *Id*.

- 15 -

Although the amount of a Class member's damages may vary, this "does not defeat certification [since] the method of calculating damages is [still] common to the class." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008); *see also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) ("'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)"); *Dodona I*, 296 F.R.D. at 271 (where plaintiff's expert has offered a "class-wide methodology for calculation of damages, any necessary individual inquiries are a far cry from the scope of individualized issues of proof that would defeat a finding of predominance"). As a result, plaintiff will be able to establish BNYM's liability and the amount of any damages through generalized proof and a class-wide, common methodology, respectively. Thus, Rule 23(b)(3)'s predominance requirement is satisfied.

BNYM has contended that plaintiff cannot demonstrate that damages are calculable on a class-wide basis. *See* Dkt. No. 105 at 18-22. This contention is false.

First, the methodology proposed by plaintiff can clearly account for any relevant factors related to damages calculations, including those previously raised by BNYM. The proposed damages methodology can accommodate the following assumptions, if necessary: (1) one or more "but-for" repurchase scenarios; (2) repurchase requests made of multiple Warrantors; (3) different resolutions of each repurchase request; (4) costs of enforcing the contractual obligations; and (5) different waterfall rules across time for both Covered Trusts. Ex. 7, ¶¶53-62. Second, contrary to BNYM's prior contention, any consideration regarding a Class member's ownership of the relevant Certificates is irrelevant to the calculation of class-wide damages. *See* Ex. 7, ¶¶49-64. Such a concern erroneously "confuse[s] the ***calculation*** of class-wide damages (which is performed at the Certificate level) with the ***allocation*** of class-wide damages (which may be based on transactions at the investor level)." Dkt. No 111-1, ¶31 (emphasis in original). And third, class-wide damages are

- 16 -

calculable irrespective of market efficiency or secondary market prices because "[i]nvestors may have suffered damages as a result of declines in Certificate values due to reduced levels of subordination . . . as well as reductions in expected future cash flows related to the allegations in this matter."  Ex. 7, ¶61.

Even if damages were not calculable on a class-wide basis, the correct result would not be to deny class certification but rather to certify the Class for liability purposes pursuant to Fed. R. Civ. P. 23(c)(4), which allows an action to be "'maintained as a class action with respect to particular issues.'"  *J.P. Morgan*, 301 F.R.D. at 142 (certifying liability-only class of RMBS purchasers based on showing that "liability may be proven on a classwide basis"; declining to find that damages can be calculated on a classwide basis "at this time"); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015).  Here, although not necessary, the Court could certify a class for purposes of determining BNYM's liability while reserving questions about individual class members' damages until after a liability determination were reached.

### 2. Concerns Regarding Administrative Feasibility Do Not Undermine Predominance

That common issues predominate is in no way undermined by any inquiries necessary to identify class members at the appropriate time, or any concerns regarding administrative feasibility.  *See* Dkt. 140 at 10-11 n. 3.

In *Petrobras*, 862 F.3d at 271-75, the Second Circuit "emphasize[d]"

that district courts are authorized to implement management strategies tailored to the particularities of each case. In addition to modifying class definitions and issuing class-wide rulings, district courts can, for example, bifurcate the proceedings to home in on threshold class-wide inquiries; sever claims not properly adjudicated on a class-wide basis to isolate key common issues; or certify subclasses that separate class members into smaller, more homogenous groups defined by common legal or factual questions.

- 17 -

1318617_1

*Id*. at 274.  In addition, the court held that questions regarding domesticity (which the court suggested might require individual inquiry), however complex, ***did not necessary predominate*** over common questions, and that, as relevant to that case, there are a "wide range of conceivable circumstances in which plaintiffs may assert class claims in connection with foreign-issued securities that do not trade on a domestic exchange":

> For instance, a district court might find that the transaction records for a particular security among particular parties display certain common indicia of domesticity. Class plaintiffs may propose a mechanism for assembling a representative sample of the manner in which a given security will trade, with an emphasis on the domesticity factors highlighted in *Absolute Activist*.  A district court could also carefully weigh the relationship between common and individual questions in the case and determine that any variation across plaintiffs is, on balance, insufficient to defeat predominance.

*Id.* at 274 n.27.

Like the issue of domesticity in *Petrobras*, any inquiries necessary to identify Class members in this action do not predominate over common questions, and courts approve of numerous mechanisms by which Class members can be ascertained, including through a claims process, transactions records and class member affidavits.  *See, e.g.*, *Kurtz v. Kimberly-Clark Corp*., No. 14-CV-114214, 2017 U.S. Dist. LEXIS 44576, at *125 (E.D.N.Y. Mar. 27, 2017); *In re Lidoderm Antitrust Litig*., No. 14-md-02521-WHO, 2017 U.S. Dist. LEXIS 24097, at *106 (N.D. Cal. Feb. 21, 2017); *Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD) (CLP), 2017 U.S. Dist. LEXIS 51530, at *23 (E.D.N.Y. Mar. 31, 2017).

That a process used to identify class members might prove burdensome is no basis to deny certification.  *See, e.g.*, *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003) (where "an examination of the individual files of each of the participants" will determine class membership, "[t]he fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement"); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012);

- 18 -

*accord Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (noting that Rule 23(c)(2)(B) "'recognizes it might be ***impossible*** to identify some class members'") (emphasis in original), *cert. denied*, No. 16-1221, 2017 U.S. LEXIS 6249 (Oct. 10, 2017); *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 45-46 (D.D.C. 2006) ("any difficulty by individual class members in tracing their particular [securities] . . . is a secondary issue to be resolved after the predominant issue of Defendant Underwriters' liability has been decided") (collecting cases).  The "'failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.'"  *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001)).

### a.    Class Members Can Be Identified Through Trading Data

Here, the members of the Class can be identified through trading data, much of which has already been gathered, or is readily available.

The Certificates at issue are legally owned by The Depository Trust Company ("DTC") in "Book-Entry" form. *See, e.g.*, Ex. 22 at 29, 37, 112.  DTC receives payments on the Certificates and distributes payments to DTC "Participants," who either own the Certificates or hold assets on behalf of the beneficial owners.  DTC maintains records of all the payments it has made with respect to the Certificates.  *See* Wood Decl., ¶¶2-3.  Those records have already been produced by DTC and indicate that, in total, DTC only ever made payments to approximately 54 separate Participant IDs.  Ex. 7, Attachment 3.  Of these Participant IDs, just 10 separate institutions received over 95% of all payments from DTC with respect to the Certificates.  Ex. 7, ¶45.

Royal Park subpoenaed 31 DTC participants seeking records sufficient to identify "'all persons or entities who owned, held, or beneficially owned or held any Certificate, or any portion of

any Certificate, at any point throughout the Relevant Period.'"  Wood Decl., ¶4.  Documents

produced responsive to these subpoenas identified beneficial owners, and some included detailed

trade data.  *See id.*  Indeed, the institution which received the second largest amount of payments

from DTC with respect to the Covered Trusts was BNYM itself, which is one of the largest

securities custodians in the country, holding trillions of dollars of assets for investors, including

Royal Park.  The availability of these records, including from BNYM itself, demonstrates that it is

administratively feasible to identify the beneficial owners of the Certificates.[9]

### b.    Class Members Are Identifiable Through a Claims Process

While the identity of Class members is determinable through the records maintained by DTC

and DTC Participants, courts also routinely utilize claims administrators to determine the identity of

class members and calculate and apportion damages.  *Kurtz*, 2017 U.S. Dist. LEXIS 44576, at *125;

*Lidoderm*, 2017 U.S. Dist. LEXIS 24097, at *106.  Indeed, in *Brecher*, the parties settled the claims

following the Second Circuit's decision, and the court approved a claims process that ascertained

class members based on transaction documents and affidavits.  Ex. 26 at 2-3; Ex. 27 at 3.

In *Brecher* the court approved a notice program that took numerous steps to ensure that

potential class members were notified of the action and ascertained.   These steps included:

(i) mailing notice to "251 brokerages, custodial banks, and other institutions ('Nominal Holders')

that hold securities in 'street name' as nominees for the benefit of their customers who are the

beneficial owners of the securities"; (ii) causing the notice "to be published by the Depository Trust

Company ('DTC') on the DTC Legal Notice System ('LENS').   LENS enables the participating

bank and broker nominees to review the Claim Package and contact the Claims Administrator for

---

[9]     In addition, ███████████████████████████████████████████████████████████
███████████████████████████  Ex. 19 at 112:10-18.  Moreover, BNYM is the Paying Agent for four of the five Covered
Trusts.  Ex. 22 at 128; Ex. 23 at 1; Ex. 24 at 68; Ex. 25 at 27.  If BNYM can make payments to Certificateholders, there
is no reason why the same process cannot be used to identify, and distribute payments to, Class members.

copies of the Claim Package for their beneficial holders"; (iii) causing the notice "to be transmitted over the *PR Newswire* and . . . over *Euroclear*"; and (iv) collecting "claim forms" requiring class members to provide identifying information concerning themselves, their investments, any sales, and trade data, if applicable.  Ex. 28, ¶¶5-6, 13; Ex. 27 at 2.  BNYM has presented no evidence whatsoever to suggest that such efforts will be insufficient to ascertain the members of this Class. Indeed, the process used in *Brecher* was in fact successful.  Identifying and determining the validity of the submitted claims from the class required no court intervention whatsoever.  Ex. 27 at 7 ("As a result of their extensive negotiations, with two very minor exceptions explained below, the parties have been able to agree upon the validity of all of the filed claims.").  To the extent ascertainability was relevant in *Brecher*, any deficiencies were driven by a failure of proof by the plaintiff, not with any intrinsic inability to identify purchasers of the bonds.  Royal Park has demonstrated ascertainability by the preponderance of the evidence, and the Class should be certified.

### c.   Potential Assignment of Claims Is Irrelevant

Contrary to BNYM's prior contentions, potential assignment of claims is not a bar to ascertainability.  That claims related to the Certificates may have been assigned is not unique to this case; indeed, virtually any claim related to any security is assignable – and that fact has never been a bar to class certification.  *See* N.Y. Gen. Oblig. Law §13-101; *see also Farey-Jones v. Buckingham*, 132 F. Supp. 2d 92 (E.D.N.Y. 2001) (Rule 10b-5 securities claims assignable). The mere fact that a claim could be assigned, therefore, is not a bar to certification.  Despite thousands of securities class actions, Royal Park is aware of no situation where a court had to adjudicate assignment disputes in resolving a class action.  BNYM's attempt to manufacture speculative issues to defeat class certification should be rejected.  *Lidoderm*, 2017 U.S. Dist. LEXIS 24097, at *105.

### 3.      A Class Action Is Superior

Rule 23(b)(3) requires plaintiff to establish "superiority" that a class action is a better way to proceed versus some other method.  To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

(A)      the class members' interests in individually controlling the prosecution . . . of separate actions;

(B)      the extent and nature of any litigation concerning the controversy already begun by . . . class members;

(C)      the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)      the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Here, each factor weighs strongly in favor of class certification.

First, there is no overwhelming interest by Class members to proceed individually, and in any case, "'the existence of large individual claims that are sufficient for individual suits is no bar to a class,'" particularly where, as here, "'the advantages of unitary adjudication exist to determine the defendant's liability.'"  *AFTRA*, 269 F.R.D. at 355; *accord IndyMac*, 286 F.R.D. at 243; *Merrill Lynch*, 277 F.R.D. at 121; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *42 (S.D.N.Y. July 27, 2007) (noting that any class members who "would prefer to individually control the prosecution of their claims . . . have the opportunity to opt out or be represented by counsel of their own choice").

Additionally, the maintenance of a class action in this District ensures an efficient expenditure of resources, will save an enormous amount in litigation costs for all parties, and will allow the parties to more efficiently prosecute their claims and defenses.  *See IndyMac*, 286 F.R.D. at 243; *Seekamp*, 2012 U.S. Dist. LEXIS 33295, at *41-*43.  Because the proposed Class members are located in geographically dispersed areas (*see* Ex. 7, ¶48) and this District has overseen the

majority of complex cases relating to mortgage-backed securities, the Southern District of New York is a desirable forum for this class action. Finally, plaintiff does not foresee any management difficulties that will preclude this case from being maintained as a class action. Consistent with the requirements of Rule 23(b)(3), the certification of this case as a class action would not only be superior to other available methods for fairly adjudicating the controversy, it would also be the ***best method*** for fairly and efficiently litigating the claims of all members of the proposed Class.

## C.    The Court Should Appoint Plaintiff's Counsel as Class Counsel

The last requirement of Rule 23(g)(4) is that the Court must appoint counsel who will fairly and adequately represent the Class. In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)    counsel's knowledge of the applicable law; and
>
> (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A); *AFTRA*, 269 F.R.D. at 346.

Plaintiff is represented by Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), whose lawyers have served as class counsel in hundreds of securities class actions. *See* Dkt. No. 101-3, ¶10. Courts have repeatedly recognized the ability of Robbins Geller to effectively litigate complex class actions, including RMBS class actions. *See, e.g.*, *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012); *Sgalambo v. McKenzie*, 268 F.R.D. 170, 174 (S.D.N.Y. 2010); *J.P. Morgan*, 301 F.R.D. at 135; *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783 (LAP), Tr. at 11:5-6 (S.D.N.Y. May 2, 2016) (The court noted in connection with precedent-setting RMBS action that Robbins Geller can be "proud of what you've done for your

- 23 -

clients.  You've done an extraordinarily good job.") (Ex. 29); Ex. 30 (firm resume).  Robbins Geller

has demonstrated its willingness to commit substantial resources to representing the proposed Class

and has undertaken significant discovery to uncover the evidence needed to support the claims.  The

ability of Robbins Geller to represent the interests of the Class leads to the conclusion that the

requirements of Rule 23(a)(4) and Rule 23(g) are satisfied and that plaintiff's counsel should be

appointed as Class Counsel.

### D.  The Proposed Class Is Ascertainable

*Petrobras*, 862 F.3d 250, confirms that the proposed Class is ascertainable, and that

defendant's prior interpretation of *Brecher* was wrong.  *See* Dkt. No. 144 at 3-5.

*Petrobras* holds that a class is ascertainable when "it is defined using objective criteria that

establish a membership with definite boundaries," and found plaintiffs had established

ascertainability with respect to a proposed class which purchased Petrobras debt securities in

"'domestic transactions,'" notwithstanding the need to "assess each class member's over-the-counter

transactions for markers of domesticity under *Morrison v. National Australia Bank Ltd.*, 561 U.S.

247, 130 S. Ct. 2869, 177 L.Ed.2d 535 (2010)," and in spite of defendants' "concerns over the

availability and content of the necessary transaction records."[10]  862 F.3d at 256-57, 261.  In other

words, the Second Circuit rejected ***the identical*** contentions made previously by BNYM concerning

ascertainability.  *See* Dkt. No. 144 at 3-5.  The Second Circuit also rejected any "administrative

feasibility" requirement for determining whether putative class members fall within the class

definition.  *Petrobras*, 862 F.3d at 264.  And it rejected the appellants' contentions that plaintiffs

were required to "provide adequate 'assurance that there can be "a reliable and administratively

---

[10]    *Petrobras* confirms that BNYM's prior (and misplaced) contentions about purported difficulties in identifying Class members (*see, e.g.*, Dkt. No. 144 at 9-11) are irrelevant to ascertainability.  *Petrobras*, 862 F.3d at 270 ("Appellants vigorously challenge the ***practicality*** of making the domesticity determination for each putative class member, but as we explain above, the ascertainability analysis is limited to narrower question of whether those determinations are objectively ***possible***.") (emphasis in original).

feasible mechanism for determining whether putative class members fall within the class

definition,'"" holding that ascertainability "does not directly concern itself with the plaintiffs' ability

to offer ***proof of membership*** under a given class definition."  *Petrobras*, 862 F.3d at 267-69

(emphasis in original).

> *Petrobras* acknowledged that the domesticity determination at issue there can be complex:
>
> [A] transaction is considered "domestic if [1] irrevocable liability is incurred or [2] title passes within the United States."  In other words, for a transaction to qualify as domestic, either (1) the purchaser must have "incurred irrevocable liability within the United States to take and pay for a security, or . . . the seller [must have] incurred irrevocable liability within the United States to deliver a security," or (2) legal title to the security must have transferred in the United States.
>
> The location or residency of the buyer, seller, or broker will not necessarily establish the situs of the transaction.  Rather, plaintiffs demonstrate the location where irrevocable liability was incurred or legal title transferred by producing evidence "including, but not limited to, facts concerning the formation of the contracts, the placement of purchase orders, . . . or the exchange of money."

*Id*. at 262.  As with the factors relevant to BNYM's purportedly necessary conflict of law analysis,

the court found these to be "clearly objective," while stressing that the ***legal analysis*** required to

determine domesticity from these criteria is relevant only to predominance, "***and are not properly***

***analyzed as issues of ascertainability***."  *Id.* at 269 & n.21.

Here, the proposed Class meets the "modest threshold requirement" articulated by *Petrobras*.

The proposed Class definition uses the objective criteria of holders of the Covered Trusts during a

defined period of time, and who suffered harm as result of BNYM's alleged breaches.

## IV.    CONCLUSION

Royal Park respectfully requests the Court: (a) certify this as a class action pursuant to Rule

23; (b) appoint Royal Park as Class Representative; and (c) appoint Robbins Geller as Class

Counsel.

1318617_1

DATED:  October 16, 2017   Respectfully submitted,

        ROBBINS GELLER RUDMAN
         & DOWD LLP
        CHRISTOPHER M. WOOD


           s/ Christopher M. Wood
         CHRISTOPHER M. WOOD

        414 Union Street, Suite 900
        Nashville, TN  37219
        Telephone:  615/244-2203
        615/252-3798 (fax)
        cwood@rgrdlaw.com

        ROBBINS GELLER RUDMAN
         & DOWD LLP
        SAMUEL H. RUDMAN
        58 South Service Road, Suite 200
        Melville, NY  11747
        Telephone:  631/367-7100
        631/367-1173 (fax)
        srudman@rgrdlaw.com

- 26 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
HILLARY B. STAKEM
JUAN CARLOS SANCHEZ
J. MARCO JANOSKI GRAY
DEBASHISH BAKSHI
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
jsanchez@rgrdlaw.com
mjanoski@rgrdlaw.com
dbakshi@rgrdlaw.com

Attorneys for Plaintiff

1318617_1

CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 16, 2017.

                                        s/ Christopher M. Wood
                                        CHRISTOPHER M. WOOD

                                        ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                        414 Union Street, Suite 900
                                        Nashville, TN  37219
                                        Telephone:  800/449-4900
                                        615/252-3798 (fax)
                                        E-mail:  cwood@rgrdlaw.com

1318617_1

# Mailing Information for a Case 1:14-cv-06502-GHW Royal Park Investments SA/NV v. The Bank of New York Mellon

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Lisa Robyn Blank**
  lplush@mayerbrown.com,jmarsala@mayerbrown.com

- **Mark Hanchet**
  mhanchet@mayerbrown.com,jmarsala@mayerbrown.com

- **Christopher James Houpt**
  choupt@mayerbrown.com,jmarsala@mayerbrown.com

- **Matthew D. Ingber**
  mingber@mayerbrown.com,jmarsala@mayerbrown.com

- **Tyler J Kandel**
  tkandel@emmetmarvin.com,pdelrio@emmetmarvin.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,jillk@rgrdlaw.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Virginia Catherine Palitz**
  vpalitz@mayerbrown.com,jmarsala@mayerbrown.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Michael Evan Rayfield**
  mrayfield@mayerbrown.com

- **Jennifer Marie Rosa**
  jrosa@mayerbrown.com,jmarsala@mayerbrown.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jarman Douglas Russell**
  jrussell@mayerbrown.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,e_file_sd@rgrdlaw.com,HDeshmukh@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)