UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

ROYAL PARK INVESTMENTS SA/NV, :   Civil Action No. 14-cv-06502-GHW
Individually and on Behalf of All Others :
Similarly Situated, :
                        :   PLAINTIFF ROYAL PARK INVESTMENTS
                        :   SA/NV'S MEMORANDUM OF LAW IN
               Plaintiff, :   SUPPORT OF MOTION REGARDING
                        :   SAMPLING-RELATED EXPERT
    vs. :   DISCOVERY
                        :
THE BANK OF NEW YORK MELLON, as :
Trustee, :
                        :
               Defendant. :
                        :

———————————————————— x

**[REDACTED]**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................1

II.  ROYAL PARK'S CLAIMS ................................................................................2

III. ARGUMENT ......................................................................................................4

    A.   Sampling Is Permissible as Part of Royal Park's Liability and Damages
        Presentations ...........................................................................................4

        1.   Courts Have Long Recognized the Admissibility of Sampling in
             RMBS Litigation.............................................................................4

        2.   BNYM and Other Trustees Have Advocated for the Use of
             Sampling to Prove Liability and Damages ...................................7

    B.   Sampling Will Efficiently and Reliably Show What BNYM Would Have
        Discovered Had It Met Its Heightened "Prudent Person" Standard
        Triggered After Gaining Knowledge of an EoD.......................................8

        1.   BNYM Had Knowledge of EoDs in the Covered Trusts.............................8

        2.   BNYM Had an Obligation to Act as a "Prudent Person" After
             Gaining Knowledge of EoDs in the Covered Trusts ...................12

        3.   BNYM Failed to Take Any Actions Under Its Heightened
             "Prudent Person" Standard ..........................................................14

        4.   Sampling Will Efficiently and Reliably Show What BNYM Would
             Have Discovered Had It Met Its Heightened "Prudent Person"
             Standard .......................................................................................16

    C.   Sampling Will Efficiently and Reliably Show the Extent and Damages
        Related to the R&W Breaches BNYM Discovered in the Covered Trusts ...........18

        1.   "Discovery," as Used in the Governing Agreements, Means
             "Knows or Should Have Known".................................................18

         2.   Illustrative Evidence Demonstrates BNYM's "Discovery" of
             Breaching Loans in the Covered Trusts ......................................20

            a.   BNYM Failed to Enforce Repurchase Obligations ████
                ██████████████████████ ..............................20

           b.   BNYM Failed to Enforce Repurchase Obligations for
                Loans with Document Deficiencies ...............................22

1392118_1

**Page**

3.    Sampling Will Efficiently and Reliably Show the Extent and
Damages Related to the R&W Breaches in the Covered Trusts ...............23

IV.    CONCLUSION ........................................................................................................24

1392118_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*,
   No. 650705/2010, 2014 WL 3282310
   (N.Y. Sup. Ct. July 3, 2014) ....................................................................................5

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
   920 F. Supp. 2d 475 (S.D.N.Y. 2013).................................................5, 6, 7, 19

*Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*,
   821 F.3d 297 (2d Cir. 2016).................................................................................18

*Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Morgan Stanley Mortg. Capital, Inc.*,
   No. 11 Civ. 0505 (CM), 2013 WL 3146824
   (S.D.N.Y. June 19, 2013).....................................................................................18

*BCS Servs., Inc. v. Heartwood 88, LLC*,
   637 F.3d 750 (7th Cir. 2011) ................................................................................4

*Beck v. Mfrs. Hanover Tr. Co.*,
   218 A.D.2d 1 (1st Dep't 1995) ...........................................................................12

*BlackRock Allocation Target Shares v. Wells Fargo Bank, Nat'l Ass'n*,
   No. 14 Civ 9764 (KPF)(SN), 2017 WL 3610511
   (S.D.N.Y. Aug. 21, 2017) ...................................................................17, 19, 23

*BlackRock Allocation Target Shares v. Wells Fargo Bank, Nat'l Ass'n*,
   No. 14 CV-09764(KPF)(SN), 2017 WL 953550
   (S.D.N.Y. Mar. 10, 2017) ...................................................................7, 17, 19

*Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v.
   DB Structured Prods., Inc.*,
   958 F. Supp. 2d 488 (S.D.N.Y. 2013).................................................................18

*Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*,
   No. 3:12-cv-933(CSH), 2014 WL 3824333
   (D. Conn. Aug. 4, 2014) ......................................................................................5

*Doe v. Am. Nat'l Red Cross*,
   923 F. Supp. 753 (D. Md. 1996).........................................................................18

*Enercomp, Inc. v. McCorhill Publ'g, Inc.*,
   873 F.2d 536 (2d Cir. 1989).................................................................................4

1392118_1

Page

*FHFA v. JPMorgan Chase & Co.*,
  No. 11 Civ. 6188 (DLC), 2012 WL 6000885
  (S.D.N.Y. Dec. 3, 2012) ........................................................................................5

*FHFA v. Nomura Holding Am. Inc.*,
  104 F. Supp. 3d 441, 494 (S.D.N.Y. 2015),
  *aff'd*, 873 F.3d 85 (2d Cir. 2017) .........................................................................6

*FMS Bonds, Inc. v. Bank of N.Y. Mellon*,
  No. 15 Civ. 9375 (ER), 2016 WL 4059155
  (S.D.N.Y. July 28, 2016) ......................................................................................12

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
  479 F. Supp. 2d 349 (S.D.N.Y. 2007) ..................................................................23

*Home Equity Mortg. Tr. Series 2006-1 v. DLJ Mortg. Capital, Inc.*,
  No. 156016/2012, slip op. (N.Y. Sup. Ct., N.Y. Cty. Nov. 19, 2013) ..................5

*In re Bank of N.Y. Mellon*,
  No. 651786/11, 2014 WL 1057187
  (N.Y. Sup. Ct. Jan. 31, 2014),
  *aff'd as modified*, 127 A.D.3d 120 (1st Dep't 2015) .................................... *passim*

*In re Residential Capital, LLC*,
  No. 12-12020, 2013 WL 3286198
  (Bankr. S.D.N.Y. June 27, 2013) ...................................................................5, 7, 17

*Jeandron v. Bd. of Regents, Univ. of Md.*,
  510 F. App'x 223 (4th Cir. 2013) .........................................................................18

*LaSalle Bank Nat'l Ass'n v. Citicorp Real Estate, Inc.*,
  No. 02 Civ. 7867(HB), 2003 WL 22047891
  (S.D.N.Y. Aug. 29, 2003) .....................................................................................19

*Law Debenture Tr. Co. of N.Y. v. WMC Mortg., LLC*,
  No. 3:12-cv-1538(CSH), 2015 WL 9581729
  (D. Conn. Dec. 30, 2015) ........................................................................................5

*LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*,
  935 F. Supp. 1333 (S.D.N.Y. 1996) ..................................................................2, 13

*LNC Invs., Inc. v. First Fid. Bank*,
  No. 92 Civ. 7584 MBM, 1997 WL 528283
  (S.D.N.Y. Aug. 27, 1997) .....................................................................................16

- iv -

Page

*MASTR Asset Backed Sec. Tr. 2006-HE3 v. WMC Mortg. Corp.*,
    No. 0:11-CV-02542-JRT, 2012 WL 4511065
    (D. Minn. Oct. 1, 2012) ..............................................................................................19, 23

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
    No. 602825/08, 2010 WL 5186702
    (N.Y. Sup. Ct. Dec. 22, 2010) ................................................................................................5

*Morgan Guar. Tr. Co. of N.Y. v. Bay View Franchise Mortg. Acceptance Co.*,
    No. 00 CIV. 8613(SAS), 2002 WL 818082
    (S.D.N.Y. Apr. 30, 2002) .....................................................................................................19

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
    No. 13-cv-6705(DLC), slip. op
    (S.D.N.Y. Apr. 30, 2014) .......................................................................................................5

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
    No. 14-CV-10104(VEC), 2017 WL 3973951
    (S.D.N.Y. Sept. 7, 2017) ................................................................................................15, 16

*Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of Am., N.A.*,
    907 F. Supp. 2d 536 (S.D.N.Y. 2012)...............................................................................19, 23

*Process Am., Inc. v. Cynergy Holdings, LLC*,
    839 F.3d 125 (2d Cir. 2016).....................................................................................................6

*RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC*,
    156 F. App'x 349 (2d Cir. 2005) .........................................................................................4, 5

*Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*,
    No. 1:14-cv-6502-GHW, 2016 WL 899320
    (S.D.N.Y. Mar. 2, 2016) ............................................................................................2, 3, 4, 12

*Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*,
    109 F. Supp. 3d 587 (S.D.N.Y. 2015)....................................................................................12

*Royal Park Invs. SA/NV v. HSBC Bank USA Nat'l Ass'n*,
    No. 14-CV-08175(LGS)(SN), 2017 WL 945099
    (S.D.N.Y. Mar. 10, 2017) ..........................................................................................7, 12, 17

*SACO I Tr. 2006-5 v. EMC Mortg. LLC*,
    No. 651820/2012, slip op. (N.Y. Sup. Ct., N.Y. Cty. Nov. 4, 2015).........................................5

**Page**

*Syncora Guarantee Inc. v. EMC Mortg. Corp.*,
   No. 09 Civ. 3106 (PAC), 2011 WL 1135007
   (S.D.N.Y. Mar. 25, 2011) ............................................................................................5

*Tyson Foods, Inc. v. Bouaphakeo*,
   __U.S.__, 136 S. Ct. 1036 (2016) ...............................................................................4

**SECONDARY AUTHORITIES**

*Black's Law Dictionary* (10th ed. 2014) .......................................................................19

Jason H.P. Kravitt, *Securitization of Financial Assets* (3d ed. 2017)
   §9.03................................................................................................................................12

*Manual for Complex Litigation* (4th ed. 2004)
   §11.493........................................................................................................................1, 4

Peter V. Marsden & James D. Wright,
   *Handbook of Survey Research* (2d ed. 2010) ............................................................1

1392118_1

## I.      INTRODUCTION

Defendant The Bank of New York Mellon ("BNYM") failed to carry out its duties as trustee for the Covered Trusts[1] by ignoring evidence of both specific and pervasive mortgage loan defects and failing to require sellers to repurchase breaching loans they sold to those trusts.  As in numerous other RMBS cases, plaintiff Royal Park Investments SA/NV ("Royal Park") intends to use reliable statistical sampling and extrapolation methods as part of its proof of liability and damages across the thousands of loans backing the Covered Trusts.

The evidence here, which Royal Park will present at summary judgment and trial, will show that BNYM disregarded both direct notices and glaring warnings that the loans in the Covered Trusts contained breaches of representations and warranties ("R&Ws"), were defectively underwritten, and were failing at alarming rates.  Moreover, upon an Event of Default ("EoD"), BNYM had a heightened fiduciary duty to act as a "prudent person" would to manage its own affairs.  And a prudent person would have investigated and enforced R&W breaches, as BNYM itself has done before, by sampling the underlying loans to determine the extent of loans underlying a trust suffering breaches.

"Sampling" is a scientifically valid and legally accepted method of using a subset of a population to estimate with a high degree of certainty characteristics of that population, such as a loan breach rate, without having to examine each member of the population.[2]  The U.S. Supreme

---

[1]   The "Covered Trusts" are the residential mortgage-backed securities ("RMBS") identified as: Encore Credit Receivables Trust 2005-2 ("ECR 2005-2"); GSC Capital Corp. Mortgage Trust 2006-1 ("GSCC 2006-1"); NovaStar Mortgage Funding Trust, Series 2006-3 ("NHEL 2006-3"); Nationstar Home Equity Loan Trust 2007-C ("NSTR 2007-C"); and Structured Asset Mortgage Investments II Trust 2006-AR4 ("SAMI 2006-AR4").

[2]   Paul S. Levy & Stanley Lemeshow, *Sampling of Populations: Methods and Applications* 22 (4th ed. 2008); Peter V. Marsden & James D. Wright, *Handbook of Survey Research* 3 (2d ed. 2010); *Manual for Complex Litigation* §11.493, at 102 (4th ed. 2004).

1392118_1

Court and numerous courts within this District have endorsed sampling to prove liability and damages, including in RMBS cases, and BNYM itself has successfully argued that statistical sampling, like that proposed by Royal Park here, is an appropriate method of establishing liability and damages in RMBS cases involving large pools of loans.

As a result, sampling on a statistically significant basis for each Covered Trust, together with loan re-underwriting and extrapolation of the breach rates, will show with reliable statistical probability the breach rates BNYM would have found and the amount of damages resulting from such misconduct had it reasonably investigated each Covered Trust.  Accordingly, the Court should allow expert-related discovery on sampling to proceed.

## II.    ROYAL PARK'S CLAIMS

As the Trustee for the Covered Trusts, BNYM owes certificateholders certain contractual duties and obligations.  BNYM's contractual duties and obligations as a Trustee are contained within the Covered Trusts' "Governing Agreements," called "Pooling and Servicing Agreements" ("PSAs"), or "Indentures" (with respect to the Indenture Trusts[3]), and other related agreements, such as "Mortgage Loan Purchase Agreements" and "Sale and Servicing Agreements."  In addition, BNYM also owes certificateholders the duty to avoid conflicts of interest under common law as well as duties under the Trust Indenture Act with respect to the two Indenture Trusts.  *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, No. 1:14-cv-6502-GHW, 2016 WL 899320, at *6-*9 (S.D.N.Y. Mar. 2, 2016).

Royal Park alleges that BNYM breached its contractual duties under the Governing Agreements as well as other related duties in three primary ways:  ***first***, BNYM "discover[ed]"

---

[3]    The "Indenture Trusts" are the Covered Trusts previously identified as ECR 2005-2 and GSCC 2006-1.

breaches of R&Ws made by a "Depositor," "Loan Sellers/Sponsors," and/or an originator or Other Transferor of the Loans (*i.e.*, one of the "Warrantors") that materially affected certificateholders' interests, but failed to enforce repurchase obligations; *second*, BNYM gained "actual knowledge" of EoDs[4] but ignored its post-EoD duty to act "as a prudent person . . . in the conduct of such person's own affairs" by, among other things, failing to examine the loans for breaches that would have led to repurchase; and *third*, BNYM failed to avoid conflicts of interest due to its ongoing business relationships with Warrantors and Servicers.  Amended Class Action Complaint and Alternative Verified Derivative Action for Breach of the Trust Indenture Act, Breach of Contract, Breach of Trust and Violation of the Streit Act ("Complaint") (ECF No. 46), ¶¶10, 15, 19.

Specifically, once BNYM discovers that loans underlying the Covered Trusts breach one of the R&Ws made by a Warrantor, it is required to notify the Warrantor of the violation and to enforce the breaching Warrantor's obligation to either substitute or repurchase the defective loan. Complaint, ¶8; *Bank of N.Y. Mellon*, 2016 WL 899320, at *2.  Once BNYM gains actual knowledge of an EoD, the Governing Agreements require it to: (1) notify and demand that the offending Servicer cure the EoD; and (2) give notice of the uncured EoD to certificateholders.  Complaint, ¶62; *Bank of N.Y. Mellon*, 2016 WL 899320, at *6.  If the offending Servicer does not timely cure the EoD, the Governing Agreements give BNYM the authority to institute legal action, terminate the offending Servicer or take over its servicing duties.  Complaint, ¶62.  And as further discussed below, the occurrence of an EoD also gives rise to a heightened duty requiring BNYM to act as a fiduciary, *i.e.*, as a reasonably "prudent person" would act with regard to his own property under the circumstances.  *See, e.g.*, Complaint, ¶¶13, 17, 64; *Bank of N.Y. Mellon*, 2016 WL 899320, at *2.

---

[4]   Generally, an EoD occurs whenever a Master Servicer or Servicer (as applicable) fails to ensure the Mortgage Loans are being legally, prudently and properly serviced.  Complaint, ¶11; *Bank of N.Y. Mellon*, 2016 WL 899320, at *6.

On March 2, 2016, the Court denied BNYM's motion to dismiss these three breach-of-contract and duty claims. *Bank of N.Y. Mellon*, 2016 WL 899320.

## III.   ARGUMENT

### A.   Sampling Is Permissible as Part of Royal Park's Liability and Damages Presentations

#### 1.   Courts Have Long Recognized the Admissibility of Sampling in RMBS Litigation

Royal Park's burden of proof is by a "preponderance of the evidence." *Enercomp, Inc. v. McCorhill Publ'g, Inc.*, 873 F.2d 536, 542 (2d Cir. 1989). "'[C]ausation in fact is established if the defendant's breach of duty was a substantial factor in producing the damage.'" *RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC*, 156 F. App'x 349, 351 (2d Cir. 2005).[5]

> Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, he has done enough to withstand summary judgment on the ground of absence of causation. The causal relation between a defendant's act and a plaintiff's injury need only be probable.

*BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 758-59 (7th Cir. 2011) (Posner, J.).

As the Supreme Court recently explained, "[a] representative or statistical sample, like all evidence, is a means to establish or defend against liability. . . .  In many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's liability." *Tyson Foods, Inc. v. Bouaphakeo*, __U.S.__, 136 S. Ct. 1036, 1046 (2016) (quoting *Manual for Complex Litigation*, *supra*, §11.493, at 102).  Sampling conserves resources by providing reliable and objective extrapolation to a population without having to examine every single transaction.

---

[5]   All emphasis is added and citations are omitted unless otherwise noted.  All "Ex." references are to the Declaration of Christopher M. Wood in Support of Plaintiff Royal Park Investments SA/NV's Motion Regarding Sampling-Related Expert Discovery.

Sampling has been widely accepted in New York (and elsewhere) as part of the proof that a defendant was probably liable and caused the asserted quantum of damages in RMBS cases. *See, e.g.*, *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 512 (S.D.N.Y. 2013) ("Sampling is a widely accepted method of proof in cases brought under New York law, including in cases relating to RMBS and involving repurchase claims.").[6] As demonstrated by the record in these RMBS cases, a sampling expert draws a loan sample capable of yielding statistically significant conclusions regarding a loan pool. A re-underwriting expert next determines how many loans in the sample materially breach R&Ws. The sampling expert extrapolates the breach rate to the entire loan pool based on statistically accepted methodologies providing a confidence level of 95% and a

---

[6] *See, e.g.*, (all RMBS cases) *Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*, No. 650705/2010, 2014 WL 3282310, at *6, *8 (N.Y. Sup. Ct. July 3, 2014) ("sampling and expert evidence may be used" at trial; forcing parties "to re-underwrite all of the loans is commercially unreasonable"; "sampling may be used to compute damages"); *SACO I Tr. 2006-5 v. EMC Mortg. LLC*, No. 651820/2012, slip op. at 16-17 (N.Y. Sup. Ct., N.Y. Cty. Nov. 4, 2015) ("use of statistical sampling to prove liability and damages on their claims is consistent with the terms of the contract governing the transactions, including but not limited to the PSAs") (Ex. 28); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/08, 2010 WL 5186702, at *4 (N.Y. Sup. Ct. Dec. 22, 2010) ("[s]tatistical sampling is a widely used method to present evidence from a large population of data" and "[i]t is undisputed that the use of statistical sampling is generally accepted in the scientific community"); *Home Equity Mortg. Tr. Series 2006-1 v. DLJ Mortg. Capital, Inc.*, No. 156016/2012, slip op. (N.Y. Sup. Ct., N.Y. Cty. Nov. 19, 2013) ("ORDERED that plaintiffs may use a statistical sampling to prove liability and damages on all of their claims") (Ex. 29); *FHFA v. JPMorgan Chase & Co.*, No. 11 Civ. 6188 (DLC), 2012 WL 6000885, at *1 (S.D.N.Y. Dec. 3, 2012); *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13-cv-6705(DLC), slip. op at 1-2 (S.D.N.Y. Apr. 30, 2014) (Ex. 30); *Syncora Guarantee Inc. v. EMC Mortg. Corp.*, No. 09 Civ. 3106 (PAC), 2011 WL 1135007, at *6 n.4 (S.D.N.Y. Mar. 25, 2011) (approving sampling and explaining that defendant "cannot reasonably expect the Court to examine each of the 9,871 transactions to determine whether there has been a breach, with the sole remedy of putting them back one by one"); *Law Debenture Tr. Co. of N.Y. v. WMC Mortg., LLC*, No. 3:12-cv-1538(CSH), 2015 WL 9581729, at *7 (D. Conn. Dec. 30, 2015); *Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*, No. 3:12-cv-933(CSH), 2014 WL 3824333, at *9 (D. Conn. Aug. 4, 2014) ("statistical evidence is an accepted and useful way of proving liability (and by extension, damages) in an RMBS case").

defined margin of error.[7]  Damages experts then use the extrapolated breach rate together with loan

values as components for calculating damages.  Where a plaintiff

> has proven the **fact** of damages by a preponderance of the evidence, "the burden of
> uncertainty as to the amount of damage is upon the wrongdoer." . . .  Therefore, a
> plaintiff need only show a "stable foundation for a reasonable estimate" of the
> damages incurred as a result of the breach[,] . . . [and] the burden of any uncertainty
> as to the amount of damages is on the breaching party.

*Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016) (emphasis in

original).

Judge Jed. S. Rakoff, presiding over a bench trial in *Flagstar*, "accept[ed] sampling as an

appropriate method of proof" and found "that the loans underlying the Trusts here at issue

pervasively breached Flagstar's contractual representations and warranties."  920 F. Supp. 2d at

512.[8]  The court held "the evidence proffered by [plaintiff's sampling and damages experts was]

clear, credible, and convincing"; the sampling expert's "sample size . . . provided an adequate basis

for assessing whether the Trusts as a whole complied with or breached Flagstar's representations and

warranties"; and the damages expert "provided a solid basis for calculating the damages occasioned

---

[7]   *See FHFA v. Nomura Holding Am. Inc.*, 104 F. Supp. 3d 441, 494 (S.D.N.Y. 2015) (Cote, J., presiding over an RMBS bench trial) ("A sample of 100 loans . . . permits results to be stated with a 95% confidence level, *i.e.*, with maximum margins of error of +/10 percent."), *aff'd*, 873 F.3d 85 (2d Cir. 2017).

[8]   Judge Rakoff interpreted the "discovery" standard at issue to impose liability upon the seller, holding that plaintiff "Assured, by informing Flagstar "'of pervasive breaches" affecting the charged off loans' with its January 2009 repurchase demand, 'rendered Flagstar constructively "aware" – or, at a minimum, put Flagstar on inquiry notice – of the substantial likelihood that these breaches extended beyond the charged off loan population and into the broader loan portfolio.'" *Flagstar*, 920 F. Supp. 2d at 512-13; *see id.* at 480 (MLPA: "'discovers a breach of any of the foregoing [R&Ws]'").

by any such breaches." *Id.* at 501. The clear majority of courts is in accord with that approach in RMBS cases.[9]

### 2.   BNYM and Other Trustees Have Advocated for the Use of Sampling to Prove Liability and Damages

Consistent with the above authority, BNYM and other RMBS trustees have themselves repeatedly advocated for the use of, and utilized, sampling as evidence in RMBS matters.  For example, as part of a larger group of RMBS trustees in *In re Residential Capital, LLC*, No. 12-12020, 2013 WL 3286198 (Bankr. S.D.N.Y. June 27, 2013), BNYM relied on a sampling of over 6,500 mortgage loan files identified by Duff & Phelps, LLC, in order to "project[] the range of future losses and potential R & W claims that could be asserted." *Id.* at *21.  The bankruptcy court, in approving the underlying debtor's entry into a plan support agreement, recognized that "[t]he methodology used by Duff & Phelps has been recognized and used in other cases asserting R & W claims." *Id.* (citing *Flagstar*, 920 F. Supp. 2d at 512).  The bankruptcy court then relied on BNYM's sampling evidence in holding that it, and the other RMBS trustees, acted prudently and in good faith in supporting the bankruptcy plan support agreement. *Id.* (citing *Flagstar*, 920 F. Supp. 2d at 512).

Similarly, in *In re Bank of N.Y. Mellon*, No. 651786/11, 2014 WL 1057187 (N.Y. Sup. Ct. Jan. 31, 2014), *aff'd as modified*, 127 A.D.3d 120 (1st Dep't 2015), BNYM, as trustee to 530 RMBS trusts, relied extensively on sampling principles to support the reasonableness of its settlement agreement with Countrywide Home Loans, Inc. ("Countrywide") related to Countrywide's alleged

---

[9]   Magistrate Judge Sarah Netburn's Opinion and Order in both *BlackRock Allocation Target Shares v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 CV-09764(KPF)(SN), 2017 WL 953550 (S.D.N.Y. Mar. 10, 2017), and *Royal Park Invs. SA/NV v. HSBC Bank USA Nat'l Ass'n*, No. 14-CV-08175(LGS)(SN), 2017 WL 945099 (S.D.N.Y. Mar. 10, 2017) ("Magistrate Netburn Opinions"), which concluded that the plaintiffs in those cases should proceed loan-by-loan in a way that precluded sampling, and that the term "discovery" in the PSAs means "actual knowledge" (*HSBC*, 2017 WL 945099, at *6-*7, *9), was in direct contrast to the above authority, and was, respectfully, in error.

R&W breaches and violations of prudent servicing obligations.  *Id.* at *6.  In support of its position, BNYM's  expert opined on potential damages related to Countrywide's alleged breach of its loan repurchase obligations pursuant to the Governing Agreements.  *Id.* at *14.  In doing so, BNYM's expert conducted a "loan-by-loan review of over 100,000 Countrywide loan files" documenting "detailed breakdowns of the rates of and reasons for repurchase[s]" and ultimately extrapolating the "defect rate" to the entire population of Countrywide-originated loans in the 530 RMBS trusts.  *Id.* at *14-*16.  And although the over 100,000 loans represented a mere fraction of the loans backing the 530 RMBS trusts at issue during the Article 77 proceeding, BNYM nonetheless argued that the breach rate identified by its expert  "was a reasonable estimate of the defect rate in the Covered Trusts."  *Id.* at *14.

> **B.** **Sampling Will Efficiently and Reliably Show What BNYM Would Have Discovered Had It Met Its Heightened "Prudent Person" Standard Triggered After Gaining Knowledge of an EoD**

> **1.** **BNYM Had Knowledge of EoDs in the Covered Trusts**

BNYM cannot reasonably dispute that it had knowledge of several EoDs in the Covered Trusts. ███████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 1 at BNYM_RP_00165319-20.

█████████████████████████████████████████████████████████████

███████████████████████████████████

For example, the GSCC 2006-1 Indenture defines an EoD as, *inter alia*, "a failure by the Issuing Entity to pay interest and principal on any Class of Offered Notes or the Principal Distribution Amount with respect to a Payment Date on such Payment Date."  Ex. 2, App. A at 9.

- 8 -

The GSCC 2006-1 Indenture defines Offered Notes as "[t]he Class A-1, Class A-2, Class A-3 and Class M-1 Notes." *Id.*, App. A at 21.  Thus, as outlined by the Indenture, an EoD in GSCC 2006-1 would occur whenever the trust failed to pay both interest and principal on the Class M-1 Notes – and that is precisely what happened on October 25, 2010, as indicated by BNYM's own remittance report.  Ex. 3 at 1.



Ex. 4 at 139:13-140:14.

*See id.* at 140:15-20

███████████████████████████████████████████████████ *See, e.g.*,

Ex. 5, §2.03 ███████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████ *id.*, §6.06 ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████

    █████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ Ex. 6 at BNYM_RP_00390911; *see*

*also Bank of N.Y. Mellon*, 2014 WL 1057187, at *9 ("Under the Governing Agreements, the Trustee

holds all right, title and interest in the mortgage loans for the benefit of the Certificateholders.").

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████ Ex. 7 ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ Ex. 8 at 143:18-144:22.



Ex. 9, App. A; Ex. 10, §3.01.

Ex. 11 at BNYM_RP_00352686, 693.

Ex. 4 at 125:22-126:10.

### 2.   BNYM Had an Obligation to Act as a "Prudent Person" After Gaining Knowledge of EoDs in the Covered Trusts

As this Court has already recognized, "[t]he duties of the trustee increase significantly if the trustee has knowledge of the occurrence of events of default."  *Bank of N.Y. Mellon*, 2016 WL 899320, at *2.  In the case of a known EoD, the Governing Agreements mandate that BNYM "exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise, as a ***prudent person*** would exercise or use under the circumstances in the conduct of such person's own affairs."  Complaint, ¶64.  After an EoD, a trustee's "obligations "'come more closely to resemble those of an ordinary fiduciary, regardless of any limitation or exculpatory provisions contained in the indenture'" [and] it now "'must, as prudence dictates, exercise those singularly conferred prerogatives in order to secure the basic purpose of any indenture, the repayment of the underlying obligation.'""  *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587, 597 (S.D.N.Y. 2015); *see also FMS Bonds, Inc. v. Bank of N.Y. Mellon*, No. 15 Civ. 9375 (ER), 2016 WL 4059155, at *14 (S.D.N.Y. July 28, 2016) ("'After an event of default, the indenture trustee's fiduciary duties expand by operation of New York common law . . . and the indenture trustee's obligations come more closely to resemble those of an ordinary fiduciary . . . .'").  In other words, post-EoD, a trustee must "secure the trust."  *HSBC*, 109 F. Supp. 3d at 609; *see also Beck v. Mfrs. Hanover Tr. Co.*, 218 A.D.2d 1, 13 (1st Dep't 1995) (finding trustee has "a fiduciary duty of undivided loyalty" and a "post[-]default obligation of prudence in the exercise of the rights and powers accorded by the indenture").

After an EoD, "the trustee will become a frontline player and the stakeholder in enforcing agreements and the rights of investors."  Jason H.P. Kravitt, *Securitization of Financial Assets* §9.03, at 9-20 (3d ed. 2017).  This heightened duty to protect certificate holders applies broadly to all of the trustee's obligations: "*Beck* requires an indenture trustee to perform prudently even the more general

- 12 -

obligations in the indenture, and applies to any conduct not specifically prohibited by the indenture which would enable the investors to secure repayment of the trust certificates." *LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*, 935 F. Supp. 1333, 1348 (S.D.N.Y. 1996).  The obligation arises because of the trustee's unique ability to protect the rights of the certificateholders.  *Id.* at 1347 ("After an event of default, 'it is . . . only the trustee who is able to act swiftly and effectively to assure . . . that the rights of the bondholders to recover what they are owed will ultimately be vindicated.'").



Ex. 12 at BNYM_RP_00386277.

Ex. 13 at 174:18-175:4

*see also* Ex. 14 at 116:25-117:5

  Thus, it is undisputed that BNYM was under the heightened "prudent person" standard after it gained knowledge of EoDs in the Covered Trusts.

1392118_1

3.      **BNYM Failed to Take Any Actions Under Its Heightened "Prudent Person" Standard**



Ex. 15 at 130:21-131:16.

Ex. 16 at 114:14-19



Ex. 14 at 117:6-13.

Ex. 17 at 47:5-23.

Nor can BNYM contend that taking no action, ████████████████████ was sufficient to meet its heightened "prudent person" standard.  In *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-CV-10104(VEC), 2017 WL 3973951 (S.D.N.Y. Sept. 7, 2017), another certificateholder suit against BNYM as trustee to numerous RMBS, BNYM argued that it acted prudently as a matter of law by simply undertaking its contractually required obligation to notify investors of the underlying EoDs.  *Id.* at *15.  The court rejected BNYM's contention, given that BNYM failed to identify any "contractual provision[s] or court decision[s] holding that, *as a matter*

- 15 -

*of law*, a prudent person would simply issue a Notice and passively wait for certificateholder direction." *Id.* Moreover, the court ruled that determining whether a trustee met its heightened prudent person duty was *a question of fact* for a jury to decide. *Id.* at \*15-\*16; *see also LNC Invs., Inc. v. First Fid. Bank*, No. 92 Civ. 7584 MBM, 1997 WL 528283, at \*16 (S.D.N.Y. Aug. 27, 1997) ("[D]eterminations of reasonableness and prudence are fact-intensive, and in this case there are issues of fact as to whether the trustees acted or failed to act as reasonably prudent people.").

Accordingly, BNYM clearly failed to meets its heightened "prudent person" standard as to each of the Covered Trusts.

### 4.     Sampling Will Efficiently and Reliably Show What BNYM Would Have Discovered Had It Met Its Heightened "Prudent Person" Standard

Sampling evidence will reliably and cost-effectively show what a trustee, acting under a heightened "prudent person" standard, would have found had it reasonably investigated each Covered Trust.  Specifically, sampling evidence will show both the existence and extent of underlying R&W breaches in the loan pools and the amount of damages resulting from such misconduct.

First, and as previously discussed, Royal Park will rely on an expert to identify a loan sample capable of yielding statistically significant conclusions about each Covered Trust.  Then, Royal Park will rely on a re-underwriting expert to identify the number of mortgage loans in the sample with material R&W breaches.  Thereafter, and similar to the exercise relied on by BNYM in conducting its own affairs in *Bank of N.Y. Mellon*, 2014 WL 1057187, Royal Park's sampling expert will extrapolate the breach rate to the entire loan pool based on statistically accepted methodologies. Indeed, BNYM already conducted a similar sample of Countrywide-originated loans covering 530 separate RMBS for which it served as trustee and uncovered, according to its expert, a 36% breach

rate. *Bank of N.Y. Mellon*, 2014 WL 1057187, at *16. And finally, Royal Park's damages expert will then use the extrapolated breach rate together with loan values and the trust's waterfall structure as components for calculating damages. This final step, once again, closely mirrors how BNYM conducted its own affairs in *Residential Capital* when it relied on a sampling of over 6,500 mortgage loan files to "project[] the range of future losses." 2013 WL 3286198, at *21.

Magistrate Netburn's ruling in *HSBC*, 2017 WL 945099, supports sampling here. In *HSBC*, plaintiff did not provide any evidence "such as industry standards or customs at the time" showing that "performing some kind of sampling review" was what a prudent person would have done following an EoD. *Id.* at *9. Such reasoning renders *HSBC*'s holding inapposite here given that, as discussed above, sampling was a BNYM standard practice during the relevant time period. More importantly, BNYM's repeated reliance on sampling is precisely the "'plausible allegation[]'" that an "'MBS trusts' trustee[]'" took "'similar action in similar circumstances (bolstering the actions a "prudent person" would have taken)'" necessary to show that sampling was necessary under *HSBC*. *Id.*

Similarly, Judge Katherine Polk Failla's holding in *BlackRock Allocation Target Shares v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 9764 (KPF)(SN), 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017), should not preclude sampling here. In overruling plaintiffs' objections in that case, Judge Failla relied on Judge Netburn's observation "that sampling could not help the Consolidated Plaintiffs to demonstrate that any 'discovery' had occurred." *Id*. at *10. Importantly, Royal Park will not use sampling to prove "discovery" of breaches by BNYM, but rather the quantum of breaches BNYM would have found had it complied with its contractual obligations, as set forth above. In precluding sampling, neither *BlackRock* nor the Magistrate Netburn Opinions have delineated this fundamental distinction between proof of the trustee's discovery of breaching loans

- 17 -

and failure to investigate (using non-sampling evidence) and proving the breaches BNYM would have found upon reasonable investigation and the damages resulting therefrom (using sampling evidence).

###### C. Sampling Will Efficiently and Reliably Show the Extent and Damages Related to the R&W Breaches BNYM Discovered in the Covered Trusts

####### 1. "Discovery," as Used in the Governing Agreements, Means "Knows or Should Have Known"

"As several courts have observed in cases involving securitized mortgage loans, 'A party "discovers" a breach when it knows or ***should know*** that the breach has occurred.'" *Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Morgan Stanley Mortg. Capital, Inc.*, No. 11 Civ. 0505 (CM)(GWG), 2013 WL 3146824, at *19 (S.D.N.Y. June 19, 2013) (emphasis in original). Indeed, the term "discovery," as used in a PSA, means that "once a party becomes aware of the relevant facts, a duty arises . . . 'to pick up the scent and nose to the source. If the quest confirms this suspicion, then [it] must'" act on its rights '"with reasonable dispatch.'" *Id.* The Second Circuit affirmed the district court's interpretation, holding that "the district court correctly observed [that] the law charges a party with discovery of [an R&W] breach . . . after it has had a reasonable opportunity to investigate and confirm its suspicions [of the breach]." *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 310 (2d Cir. 2016); *see also Doe v. Am. Nat'l Red Cross*, 923 F. Supp. 753, 756 (D. Md. 1996) ("'[I]mplied actual knowledge [is] that knowledge that would in all probability have resulted from a diligent investigation pursued upon awareness of circumstances that would cause a reasonable person to investigate.'"); *Jeandron v. Bd. of Regents, Univ. of Md.*, 510 F. App'x 223, 227 (4th Cir. 2013) (per curiam) (holding that "implied actual knowledge" is established when a party "is on inquiry notice," which "notice arises 'when a plaintiff gains knowledge sufficient to prompt a reasonable person to inquire further'"); *Deutsche Alt-A Sec. Mortg. Loan Tr.,*

- 18 -

*Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 494 (S.D.N.Y. 2013) (construing "discovery" in a PSA to mean "knew, or should have been aware" of R&W breaches); *Flagstar*, 920 F. Supp. 2d at 512-13 (interpreting similar PSA language to mean "constructively 'aware'" or "inquiry notice"); *Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of Am., N.A.*, 907 F. Supp. 2d 536, 553-54 (S.D.N.Y. 2012) (holding that a trustee aware of "facts 'suggestive of a breach' . . . was required to 'pick up the scent and nose to the source' – *i.e.*, to investigate any suspicions about the loans . . . in the Trusts," and "had no right to" proceed as though "'living under a rock' . . . given its role and responsibilities").[10]

Following the Second Circuit's BNYM decision, Judge Failla recently held in the *BlackRock* action that it "is inconsistent with the bargained-for terms of the PSAs [to] treat[] . . . 'discovery' and 'actual knowledge' as synonymous, when the use of two different terms to address two different subjects in two different sections of the PSAs must be given meaning. . . .  Plaintiffs ***are correct in their identification*** of relevant contract-interpretation principles."  2017 WL 3610511, at *9 ("[a]llowing that 'discovery' and 'actual knowledge' are different terms that must be given different meanings").  Judge Failla concluded that "[i]t is . . . plausible . . . that the Consolidated Plaintiffs could demonstrate 'discovery' through a showing of conscious avoidance or implied actual knowledge," the latter term being "defined as '[k]nowledge of information that would lead a reasonable person to inquire further.'"  *Id.* at *10 (quoting *Black's Law Dictionary* (10th ed. 2014)).

---

[10]   *See also MASTR Asset Backed Sec. Tr. 2006-HE3 v. WMC Mortg. Corp.*, No. 0:11-CV-02542-JRT, 2012 WL 4511065, at *6-*7 (D. Minn. Oct. 1, 2012) (upon "[l]earning of facts . . . suggestive of a breach . . . 'it becomes incumbent [upon a party subject to obligations triggered by discovery] to pick up the scent and nose to the source'"; holding that the Trustee "was duty-bound to investigate its suspicions" and was "constructively aware of the breaches"); *LaSalle Bank Nat'l Ass'n v. Citicorp Real Estate, Inc.*, No. 02 Civ. 7867(HB), 2003 WL 22047891, at *6 (S.D.N.Y. Aug. 29, 2003) ("'[a] party "discovers" a breach when it knows or should know [based on awareness of 'red flags'] that the breach has occurred'"); *Morgan Guar. Tr. Co. of N.Y. v. Bay View Franchise Mortg. Acceptance Co.*, No. 00 CIV. 8613(SAS), 2002 WL 818082, at *5 (S.D.N.Y. Apr. 30, 2002).

Other similarly situated RMBS trustees have themselves repeatedly argued that a party "discovers" a breach pursuant to a PSA "when it knew or should have known that a breach had occurred."  For example, in a repurchase action between trustees HSBC Bank USA, N.A. ("HSBC") and Deutsche Bank National Trust Company ("Deutsche Bank"), HSBC argued that Deutsche Bank's claim should be dismissed for failure to provide "prompt written notice" "[u]pon . . . discovery" once it "knew or should have known of those alleged breaches."  Ex. 18 at 21-22.

### 2.    Illustrative Evidence Demonstrates BNYM's "Discovery" of Breaching Loans in the Covered Trusts

Documents and testimony obtained in discovery illustrate how Royal Park will meet its burden to show BNYM's "discovery" of breaching loans at summary judgment or trial, triggering its obligation to investigate, and how sampling will thereafter be used to prove what BNYM would have discovered had it conducted the required investigation.

### a.    BNYM Failed to Enforce Repurchase Obligations

████████████████████████████████

Beyond the many instances outlined in the Complaint regarding BNYM's discovery of pervasive R&W breaches plaguing the mortgage industry (*see* Complaint, ¶¶76-107, 119-128),

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████   Ex. 19 at BNYM_RP_00172327, 331, 333.   ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

- 20 -

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

*Id.* at BNYM_RP_00172333-35.

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████ Ex. 20 at BNYM_RP_00003343. ████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ *Id.* at BNYM_RP_00003343-44. █████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████ *Id.* at BNYM_RP_00003341. ██████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████ Ex. 21 at

BNYM_RP_00003501; Ex. 8 at 190:8-22 █████████████████████

██████████████████████████████████████████

███████████████████████████



See, e.g., Ex. 22 at BNYM_RP_00294419

Ex. 23 at

BNYM_RP_00003250

Ex. 24 at BNYM_RP_00294359

See, e.g., Ex. 8 at

190:5-12

### b. BNYM Failed to Enforce Repurchase Obligations for Loans with Document Deficiencies

BNYM also failed to enforce repurchase obligations for breaches of R&Ws relating to

missing or deficient documents that were required to be in the collateral files/loan files per the

Governing Agreements ("Document Exceptions").[11]  BNYM was required to generate or receive

---

[11]   *See also* Ex. 25, §2.02(a) at 53 ("if the Sponsor fails to correct or cure the [document] defect within such period, and such defect materially and adversely affects the interests of the Certificateholders in the related Mortgage Loan, the Trustee or the Custodian, as its agent, ***shall enforce the Sponsor's obligation*** pursuant . . . to, within 90 days from the Trustee's or the Custodian's notification, provide a Substitute Mortgage Loan (if within two years of the Closing Date) or purchase such Mortgage Loan at the Repurchase Price").

- 22 -

exception reports itemizing and listing all Document Exceptions for loans in each of the Covered Trusts at, or soon after, a deal closing.  *See, e.g.*, Ex. 25 (SAMI 2006-AR4 Amended PSA), §2.02.



*See, e.g.*, Ex. 26 (SAMI 2006-AR4 final certification exception report).

Ex. 27 at 20:4-19.

*Id.* at 20:25-21:3.

Based on this and other evidence, a jury could easily conclude that BNYM consciously avoided enforcing repurchase obligations for loans in the Covered Trusts that it knew and/or "discovered" suffered from breaches of R&Ws.

### 3. Sampling Will Efficiently and Reliably Show the Extent and Damages Related to the R&W Breaches in the Covered Trusts

BNYM discovered R&W breaches or, at the very least, should have "'pick[ed] up the scent and nose[d] to the source' – *i.e.*, to investigate any suspicions about the loans and Mortgage Files in the Trusts."  *Policemen's Annuity*, 907 F. Supp. 2d at 554 (quoting *MASTR*, 2012 WL 4511065, at *7); *see also BlackRock*, 2017 WL 3610511, at *10 ("At some point, 'when "it can almost be said that [Defendant] actually knew" because [Defendant] suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge,' there arises a duty to nose to the source.") (quoting *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479

- 23 -

F. Supp. 2d 349, 368 (S.D.N.Y. 2007)).  Had BNYM performed the required investigations or analyses, it would have discovered the extent to which loans in the Covered Trusts suffered breaches and the magnitude of their related damages.  Indeed, BNYM could have uncovered, as BNYM previously found, a breach rate for all Countrywide-originated mortgage loans of 36%.  *Bank of N.Y. Mellon*, 2014 WL 1057187, at *16.  Thus, what BNYM would have found following such required investigations can be proven here through sampling.

Further, a proper sampling protocol can be designed to accurately assess: materiality of the breach, the pre-existing nature of the breach, the breach's effect on the value of loans, loans where the warrantors have financial viability, and the effect of any other mitigating circumstances or compensating factors, if relevant.  Each of these factors can be reviewed on a loan-by-loan and trust-by-trust basis in the sample.  And finally, using sampling to show the breaches a reasonable trustee would have found upon properly executing its duties as an RMBS trustee is both a permissible and efficient means for Royal Park to present its case, as the alternative would be to re-underwrite thousands more loans across the five Covered Trusts – a costly endeavor that may add millions of additional dollars to this already burdensome litigation.

## IV.    CONCLUSION

Royal Park respectfully requests that the Court allow the parties to conduct sampling-related expert discovery.

DATED:  March 18, 2019                            Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

- 24 -

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
HILLARY B. STAKEM
JUAN CARLOS SANCHEZ
J. MARCO JANOSKI GRAY
DEBASHISH BAKSHI
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
jsanchez@rgrdlaw.com
mjanoski@rgrdlaw.com
dbakshi@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

Attorneys for Plaintiff

- 25 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on March 18, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)

E-mail:  cwood@rgrdlaw.com

1393064_1

# Mailing Information for a Case 1:14-cv-06502-GHW Royal Park Investments SA/NV v. The Bank of New York Mellon

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Mark Hanchet**
  mhanchet@mayerbrown.com,jmarsala@mayerbrown.com

- **Christopher James Houpt**
  choupt@mayerbrown.com,jmarsala@mayerbrown.com

- **Matthew D. Ingber**
  mingber@mayerbrown.com,jmarsala@mayerbrown.com

- **Tyler J Kandel**
  tkandel@emmetmarvin.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,jillk@rgrdlaw.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com,9870190420@filings.docketbird.com

- **Virginia Catherine Palitz**
  vpalitz@mayerbrown.com,jmarsala@mayerbrown.com,9426214420@filings.docketbird.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Michael Evan Rayfield**
  mrayfield@mayerbrown.com,jmarsala@mayerbrown.com,6559595420@filings.docketbird.com

- **Jennifer Marie Rosa**
  jrosa@mayerbrown.com,jmarsala@mayerbrown.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jarman Douglas Russell**
  jrussell@mayerbrown.com,6611373420@filings.docketbird.com,jmarsala@mayerbrown.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,susanw@rgrdlaw.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,9101599420@filings.docketbird.com,e_file_sd@rgrdlaw.com,HDeshmukh@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)