USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/18/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
:
ROYAL PARK INVESTMENTS SA/NV :
*Individually and on Behalf of All Others Similarly Situated*, :
: 1:14-cv-6502-GHW
Plaintiff, :
: MEMORANDUM OPINION
-v - : AND ORDER
:
THE BANK OF NEW YORK MELLON :
*as Trustee*, :
:
Defendant. :
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      This dispute is the latest iteration of a recurring discovery issue arising from Royal Park Investments SA/NV's ("Plaintiff" or "Royal Park") many litigations against residential mortgage-backed securities ("RMBS") trustees. Plaintiff filed this action against The Bank of New York Mellon ("Defendant" or "BNYM"), the trustee of five RMBS in which Royal Park is an investor, asserting claims for breach of contract, breach of the duty of trust, and violations of sections 315(b) and 315(c) of the Trust Indenture Act. As part of its discovery in this case, Royal Park seeks to engage experts to select samples of mortgage loans from each of the five trusts and to perform analyses on those samples of loans to extrapolate information about the quality of all of the loans in the trusts, a process Royal Park refers to as "sampling-related expert discovery." Predicting that BNYM would object to this expert discovery under Fed. R. Civ. P. 26, Royal Park preemptively moved for an order from the Court permitting it to take such discovery. Because the Court finds that Royal Park's proposed sampling-related expert discovery is not proportional to the needs of the case, Plaintiff's motion for sampling-related expert discovery is DENIED.

I.     BACKGROUND

The Court assumes familiarity with the facts alleged in the complaint and the background of this matter as set forth in the Court's March 2, 2016, August 30, 2017, and February 15, 2019 opinions. *See Royal Park Invs. SA/NV v. Bank of New York Mellon*, No. 14-cv-6502 (GHW), 2019 WL 652841, at *1-2 (S.D.N.Y. Feb. 15, 2019); *Royal Park Invs. SA/NV v. Bank of New York Mellon*, No. 14-cv-6502 (GHW), 2017 WL 3835339, at *1-2 (S.D.N.Y. Aug. 30, 2017); *Royal Park Invs. SA/NV v. Bank of New York Mellon*, No. 14-cv-6502 (GHW), 2016 WL 899320, at *1-2 (S.D.N.Y. Mar. 2, 2016). In brief, Royal Park is an investor in five RMBS trusts for which BNYM served as trustee. Am. Compl., Dkt. No. 46, at ¶¶ 29, 37. Royal Park alleges that BNYM breached its contractual duties under the agreements governing the securitizations as well as other related duties in three ways. First, Royal Park alleges that BNYM "discover[ed]" breaches of the representations and warranties ("R&Ws") regarding the quality and characteristics of the loans in the trusts but failed to enforce repurchase obligations against the entities which made the R&Ws (also known as "warrantors"). *Id.* at ¶ 10. Second, Royal Park claims that BNYM gained "actual knowledge" of servicer "Events of Default" ("EODs"), but failed to abide by its post-EOD duty to exercise the powers available to it under the governing agreements as would a "prudent person . . . in the conduct of such person's own affairs." *Id.* at ¶ 15. Third, Royal Park asserts that BNYM failed to avoid conflicts of interest due to its ongoing business relationships with warranting parties and servicers. *Id.* at ¶¶ 19-20, 174.

For its requested sampling-related expert discovery, Royal Park proposes the following process. First, a sampling expert will select a statistically significant sample of mortgage loans from a loan pool. Plaintiff's Memorandum of Law in Support of Motion Regarding Sampling Related Expert Discovery, Dkt. No. 187 ("Pl. Mem."), at 5. Then, a loan reunderwriting expert will examine the mortgage loan origination files and other documentation to determine how many loans in the sample materially breach the R&Ws regarding the quality and characteristics of the mortgage loans.

2

*Id.* The sampling expert will then extrapolate the R&W breach rate for the sample of loans to determine the breach rate for the entire pool of loans, within a defined margin of error. *Id.* Royal Park claims that this process will reveal "with reliable statistical probability the breach rates BNYM would have found and the amount of damages resulting from such misconduct had it reasonably investigated each Covered Trust." *Id.* at 2.

BNYM does not—at least for purposes of this motion—deny that the type of sampling-related expert discovery proposed by Royal Park can and has been used to determine breach rates for underlying pools of loans. Instead, BNYM argues that the cost of such discovery is high—ranging from hundreds of thousands to millions of dollars—and the probative value is low, because, among other reasons, general breach rates do not establish that BNYM actually discovered breaches of individual R&W or had knowledge of any EODs, a prerequisite to liability. BNYM's Opposition to Plaintiff's Motion Regarding Sampling-Related Expert Discovery, Dkt. No. 193 ("Def. Mem."), at 2-3, 22-23. The issue before the Court therefore is whether the cost of obtaining information about breach rates is proportional to the needs of this case under the standard set forth in Fed. R. Civ. P. 26.

## II. LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure states that a party is entitled to discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance is . . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-cv-1789 (ER) (JLC), 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-cv-9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015)).

"Evidence that is irrelevant or may result in undue prejudice is outside the scope of discovery." *Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 8 (S.D.N.Y. 2015). A court may issue a protective order in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "Ultimately, 'the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectible interests of the party from whom discovery is sought.'" *Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16-cv-1805 (JPO) (JCF), 2017 WL 3055098, at *3 (S.D.N.Y. July 18, 2017) (quoting *Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005)).

## III. DISCUSSION

To determine whether sampling-related expert discovery is proportional to the needs of this case, the Court must evaluate whether the significance of R&W breach rate information to Royal Park's claims justifies the cost of obtaining such information. *See In re Weatherford Int'l Sec. Litig.*, No. 11-cv-1646 (LAK) (JCF), 2013 WL 2355451, at *5 (S.D.N.Y. May 28, 2013) ("A proportionality analysis requires the court to balance the value of the requested discovery against the cost of its production."). Royal Park argues that breach rate information has potential relevance to two of its theories of liability. Those theories are, first, Royal Park's claim that BNYM "discovered" (meaning "knew or should have known" about) breaches of R&Ws for loans in the trusts and failed to require warrantors to repurchase the loans and, second, Royal Park's claim that after BNYM became aware of various EODs—thus requiring it to act as a "prudent person"—BNYM should have investigated the underlying loans in the trusts for evidence of breaches of R&Ws and enforced repurchase obligations for breaching loans. According to Royal Park, R&W breach rates will show that had BNYM investigated the loans in the trusts, it would have discovered significant numbers of loans which should have been put back to the warrantors.

4

As the parties acknowledge, the Court "does not write on a blank slate" with regard to Plaintiff's motion. *Blackrock Balanced Capital Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-9367 (JMF), 2018 WL 3120971, at *1 (S.D.N.Y. May 17, 2018). Magistrate Judges Netburn, Lehrburger, and Moses have each considered near-identical requests for sampling-related expert discovery and have concluded—in a series of decisions frequently referred to as the "Trustee Sampling Decisions," a term which the Court will adopt—that such discovery was not proportional to the needs of the cases before them. *See BlackRock Allocation Target Shares v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-9371 (KPF) (SN), 2017 WL 953550, at *1 (S.D.N.Y. Mar. 10, 2017) (Netburn, M.J.); *Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n*, No. 14-cv-8175 (LGS) (SN), 2017 WL 945099, at *1 (S.D.N.Y. Mar. 10, 2017) (Netburn, M.J.); *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, No. 14-cv-2590 (VM) (RWL), 2018 WL 3350323, at *1 (S.D.N.Y. July 9, 2018) (Lehrburger, M.J.); *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-4394 (AJN) (BCM), 2018 WL 4682220, at *1 (S.D.N.Y. Sept. 28, 2018) (Moses, M.J.).[1] Although the Court ultimately agrees with the outcome of those cases, it does not—for the reasons discussed in more detail below—adopt their reasoning in full.

Each of the Trustee Sampling Decisions concludes that if plaintiff investors seek to hold a trustee liable for failing to enforce warrantors' obligations to repurchase loans that breach R&Ws, plaintiffs must prove each element of those claims on a "loan-by-loan" basis—a position which necessarily limits the probative value of sampling evidence. The Trustee Sampling Decisions base

---

[1] Judge Netburn's and Judge Lehrburger's opinions on this issue were reviewed for clear error and upheld by District Judges Failla, Schofield, and Marrero. *See BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-10067 (KPF) (SN), 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017) (Failla, J.); *Royal Park Invs. SA/NV v. HSBC Bank USA, Inc.*, No. 14-cv-8175 (LGS), 2018 U.S. Dist. LEXIS 31157 (S.D.N.Y. Feb. 23, 2018) (Schofield, J.); *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 349 F. Supp. 3d 282, 283 (S.D.N.Y. 2018) (Marrero, J.). Although Royal Park filed objections to Judge Moses' decision with the district court, the case settled before Judge Nathan issued a ruling on those objections.

their conclusion that investors' claims require loan-by-loan proof both on language from the Second Circuit's decision in *Retirement Board v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014), and on the "sole remedy" clauses in the governing securitization documents, which generally restrict the trustee to the sole remedy of "cure, substitution, or repurchase" in the case of R&W breaches. *See BlackRock*, 2017 WL 953550, at *5 ("Plaintiffs must first show which specific loans were in breach because any defect that would be cured by repurchase is loan specific."); *Royal Park v. U.S. Bank*, 2018 WL 3350323, at *2 ("The principal reason given by each of the Trustee Sampling Decisions for precluding the use of sampling is that under the language of the relevant agreements governing the trusts, the sole remedy provided to the trustee with regard to breaching loans is to seek repurchase on a loan-by-loan, trust-by-trust basis. In other words, whether and to what extent a trustee can obtain repurchase of breaching loans must be determined separately for each specific loan."); *Royal Park v. Deutsche Bank*, 2018 WL 4682220 at *12 ("Where, as here, the sole remedy available to the Trustee under the express terms of the PSAs is inherently loan-specific, both liability and damages must be established 'loan by loan,' making sampling unhelpful.").

The Court is not persuaded that either *Retirement Board* or the "sole remedy clause" entirely precludes the use of sampling in this case, particularly to establish damages. As a general matter, to establish damages for a breach of contract under New York law, "[t]he plaintiff need only show a stable foundation for a reasonable estimate of the damage incurred as a result of the breach. Such an estimate necessarily requires some improvisation, and the party who has caused the loss may not insist on theoretical perfection." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110-11 (2d Cir. 2007) (internal quotations and citations omitted). As discussed below, it is not apparent that the dicta in *Retirement Board* referring to "loan-by-loan" proof was intended to upend this well-established principle. And the sole remedy clause does not prevent Royal Park from seeking monetary damages against BNYM in this case—or prescribe the specific proof required to

6

establish their amount—for the simple reason that the sole remedy clause outlines the specific remedies available in actions against warrantors, and this is not an action against a warrantor. As a result, unlike in the Trustee Sampling Decisions, the Court's decision here does not rest on the conclusion that damages in this action must be proven on a loan-by-loan basis as a matter of law.

In *Retirement Board*, the Second Circuit was asked to decide whether plaintiffs who had invested in certain RMBS trusts had class standing to sue the trustee for damages relating to trusts in which the plaintiffs did not invest, under the theory that investors in all of the trusts were harmed by the trustee's common policy of "inaction" in the face of widespread defaults. 775 F.3d. at 162. Applying the test for class standing articulated in *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), the Circuit considered whether the plaintiffs had adequately demonstrated "(1) that [they] personally had suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Ret. Bd.*, 775 F.3d at 161. Under the second prong of the *NECA* test, "[t]he core question is whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant." *Ret. Bd.*, 775 F.3d at 163. Because the plaintiffs' claims would require proof that was individualized to each trust, the Second Circuit concluded that the proposed class representatives did not have a sufficient interest in litigating claims for trusts in which they did not invest to establish class standing. *Id.* at 162 ("[E]ven proof that BNYM always failed to act when it was required to do so would not prove [plaintiffs'] case, because they would still have to show which trusts actually had deficiencies that required BNYM to act in the first place.").

The holding of *Retirement Board*, therefore, says little about the type of proof Royal Park must adduce to prove its claims here. However, in explaining why investors in one trust would have

7

minimal interest in proving claims related to trusts in which they did not invest, the Second Circuit offered some limited exposition on the type of proof investor plaintiffs would need to offer to prove their claims against RMBS trustees:

> Plaintiffs allege that BNYM violated its duties when it failed to notify certificateholders of Countrywide's breaches of the governing agreements, failed to force Countrywide to repurchase defaulted mortgage loans, and failed to ensure that the mortgage loans held by the trusts were correctly documented. In contrast to *NECA*, where the defendants' alleged Securities Act violations inhered in making the same misstatements across multiple offerings, BNYM's alleged misconduct must be proved loan-by-loan and trust-by-trust. For example, whether Countrywide breached its obligations under the governing agreements (thus triggering BNYM's duty to act) requires examining its conduct with respect to each trust. Whether it was obligated to repurchase a given loan requires examining which loans, in which trusts, were in breach of the representations and warranties. And whether a loan's documentation was deficient requires looking at individual loans and documents. We see no way in which answering these questions for the trusts in which Plaintiffs invested will answer the same questions for the numerous trusts in which they did not invest.

*Id.* at 162.

The Trustee Sampling Decisions rely on the "loan-by-loan, trust-by-trust" language from *Retirement Board* to conclude that all facets of Royal Park's claims relating to a trustee's failure to enforce repurchase obligations must be proven entirely on a loan-by-loan level. But the decision in *Retirement Board*—which is, fundamentally, about differences in proof for different trusts—does not appear to go that far. *Retirement Board* states that BNYM's "*misconduct* must be proved loan-by-loan and trust-by-trust." *Id.* (emphasis added). That is exactly what Royal Park proposes to do here. Royal Park does not intend to prove BNYM's discovery of breaches or failure to investigate with sampling-related evidence; instead it intends to use sampling evidence to demonstrate what BNYM would have found had it investigated the loans in trusts, in order to establish the existence and amount of its damages. Pl. Mem. at 16, 20. Whether the results of BNYM's misconduct (*i.e.*, evidence of Royal Park's damages)—as opposed to the existence of misconduct—must be proven

8

entirely with loan-by-loan evidence is a question that the oft-cited dictum of *Retirement Board* does not address.

Nor does the existence of "sole remedy" clauses preclude Royal Park from proving its claims against BNYM using sampling evidence. In each of the trusts at issue here—as was the case with the trusts at issue in the Trustee Sampling Decisions—the warrantors' obligation to cure R&W breaches, substitute a conforming loan in place of a loan with R&W breaches, or repurchase a breaching loan from the trust is BNYM's "sole remedy" for R&W breaches. *See* ECR 2005-2 Indenture (Dkt. No. 152-22) at § 2.03; NHEL 2006-3 PSA (Dkt. No. 152-24) at § 2.03(b); NSTR 2007-C PSA (Dkt. No. 152-25) at § 3.04(a); SAMI 2006-AR4 Amended and Restated PSA (Dkt. No. 106-8) at § 2.03(b). Thus, even if BNYM had discovered breaches of R&Ws for loans in the trusts, the only remedy it could have pursued on behalf of investors would have been to put back the loans to the warrantors.

In put-back actions brought against warrantors, some courts in this district have concluded that the existence of the sole remedy clause requires the plaintiff to put forth loan-by-loan proof of its claims, thus precluding the use of statistical sampling to prove liability. *See Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12-cv-5067 (JFK), 2017 WL 5256760, at *7 (S.D.N.Y. 2017) ("The structure of these provisions—and the nature of the defined terms therein—leads to the conclusion that the parties agreed upon a remedial process that generally calls for proof of breach on a loan-by-loan basis."). But that position is not uniform among courts applying New York law. *See SACO I Tr. 2006-5 v. EMC Mortg. LLC*, No. 651820/2012, Doc. No. 564 at 16-17 (N.Y. Sup. Ct. Nov. 4, 2015) ("[T]he use of statistical sampling to prove liability and damages on [the trustees' put-back] claims is consistent with the terms of the contract governing the transactions, including but not limited to the PSAs."); *Home Equity Mortgage Trust Series 2006-1, 2006-3, and 2006-4 v. DLJ Mortgage Capital, Inc.*, Index No. 156016/2012, Dkt. No. 236 (N.Y. Sup. Ct. Nov. 19, 2013) (allowing plaintiff

9

trustee to use sampling to prove liability in a put-back case, over defendant's objection that the sole remedy provision is "incompatible with proving liability or damages through sampling.").[2] But even if BNYM would have been obligated to put forth loan-by-loan proof in attempting to obtain specific performance of repurchase obligations by warrantors, it is not clear to the Court that Royal Park must necessarily be held to the same requirement here to establish monetary damages based on BNYM's failure to investigate R&W breaches and enforce warrantors' repurchase obligations.

In *Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*, Judge Rakoff allowed a bond insurer to use sampling to prove damages which it claimed it sustained as a third-party beneficiary of certain RMBS securitization contracts, even though those contracts contained a sole remedy clause similar to the ones at issue here. 920 F. Supp. 2d 475, 512 (S.D.N.Y. 2013). The bond insurer claimed that had the defendant-warrantor repurchased loans from the trusts at the time it was obligated to do so, the insurer would not have been required to make payments to bondholders when the borrowers on those loans defaulted. *Id.* As in *Flagstar*, Royal Park's theory of damages must be tethered to the reality that, even if BNYM had fully investigated and discovered breaches, the only recourse available to BNYM would have been to pursue repurchase. But—also as in *Flagstar*—Royal Park ultimately seeks monetary damages, not specific performance of the repurchase remedy. BNYM is

---

[2] As BNYM correctly notes, in *SACO*, plaintiffs sought to use sampling to prove liability and damages as to liquidated loans which were no longer in the trusts. The extent to which Judge Bransten's conclusion that sampling was permissible depended on the loans' liquidated status is unclear to the Court. Although her reasoning repeatedly references the fact that all of the loans were liquidated, her ultimate conclusion appears to be based on the language of the contract. *SACO I Tr. 2006-5*, No. 651820/2012, Doc. No. 564 at 15 ("Plaintiffs have demonstrated that as a matter of law, the PSA's 'cure-and-repurchase provision' does not bar sampling as a vehicle for proof."). The First Department has specifically held that for liquidated loans for which cure or repurchase is impossible, plaintiffs may pursue monetary damages even if the securitization agreements contain a sole remedy clause. *Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.*, 19 N.Y.S.3d 1, 9 (N.Y. App. Div. 1st Dep't 2015*), aff'd as modified sub nom. Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Capital*, Inc., 30 N.Y.3d 572 (2017). For claims involving liquidated loans, therefore, the argument that the sole remedy clause bars the use of sampling is significantly undermined. The Court is not aware, however, how many—if any—of the loans at issue in this case were liquidated at the time Royal Park asserts BNYM should have initiated put-back claims with the warrantors.

10

not entitled to insist that Royal Park prove its entitlement to damages with loan-by-loan precision based on a sole remedy clause that does not directly apply to this case. *See Tractebel Energy Mktg., Inc.*, 487 F.3d at 110-11.

Ultimately, however, the Court cannot conclude that Royal Park's proposed sampling-related expert discovery is proportional to the needs of this case because breach rate evidence only provides substantial probative value for Royal Park's claims if Royal Park can demonstrate that BNYM was under an obligation to conduct a investigation of the loans in each of the trusts. *See* Pl. Mem. at 2 ("[S]ampling . . . will show . . . the breach rates BNYM would have found and the amount of damages resulting from such misconduct had it reasonably investigated each Covered Trust."); *id.* at 16 ("Sampling evidence will reliably and cost-effectively show what a trustee . . . would have found had it reasonably investigated each Covered Trust."); *id.* at 20 ("[S]ampling will . . . be used to prove what BNYM would have discovered had it conducted the required investigation."). Royal Park has failed to make any convincing showing that BNYM was indeed under such an obligation.

First, it is unclear to the Court how Royal Park's theory that BNYM "discovered" breaches of R&Ws when it "knew or should have known" about those breaches leads to the conclusion that BNYM was under a broad duty to investigate the loans in the trusts. As Judge Netburn noted, "the First Department has ruled that an RMBS trustee has no 'duty to nose to the source' with respect to 'discovering if Events of Default . . . or other PSA breaches [have] occurred." *BlackRock*, 2017 WL 953550, at *7 (citing *Commerce Bank v. Bank of N.Y. Mellon*, 35 N.Y.S.3d 63 (App. Div. 1st Dep't 2016) (internal alterations omitted)). Furthermore, the Court agrees with the Trustee Sampling Decisions that reading such a broad duty into the underlying contracts would conflict with the BNYM's limited pre-EOD role as an indenture trustee. *See id.* at 7.

Royal Park also argues that once BNYM had notice of servicer EODs, it became obligated to act as would a "prudent person . . . in the conduct of such person's own affairs"—and that a

11

"prudent trustee" would have investigated all of the loans in the trusts for breaches of R&Ws. This theory may be plausible. But—as the Trustee Sampling Decisions repeatedly noted—Royal Park has yet to adduce any evidence supporting its contention that the "prudent person" standard encompasses a duty to investigate. *See id.* at *9; *see also Royal Park v. Deutsche Bank*, 2018 WL 4682220 at *14-15 ("Absent a firmer foundation for RPI's claim that a prudent person was required to hunt for R&W breaches after a Master Servicer EOD, I am reluctant to authorize the use of sampling, years later, to approximate what that prudent person would have found had it done its own sampling at the time." (alterations omitted)). The only additional evidence Royal Park has put forth on this motion that was not considered in the Trustee Sampling Decisions is BNYM's alleged use of sampling in other litigations. Even accepting Royal Park's characterizations of BNYM's positions in those litigations—which BNYM vigorously disputes—BNYM's litigation strategies do not support the position that a prudent trustee, long before litigation commenced, would be required to investigate the loans in the trust to seek out potential breaches of R&Ws. Royal Park's evidence simply does not move the needle on this point.

The Court recognizes that discovery in this case is ongoing and that Royal Park may yet put forth evidence that supports its theory that a prudent trustee would have investigated the loans in the trust. But the Court must decide the motion currently before it. Unlike the previous courts to have considered this issue, the Court does not conclude that Royal Park's proposed sampling is necessarily a "dead end." *Royal Park v. Deutsche* Bank, 2018 WL 4682220 at *15. But it is a blind corner. The Court cannot conclude—under the proportionality analysis required under Rule 26—that the parties in this case should expend hundreds of thousands of dollars on expert discovery when the probative value of that discovery hinges upon a factual theory that Royal Park has yet to demonstrate is viable. Accordingly, Royal Park's motion for sampling-related expert discovery is denied.

## IV. CONCLUSION

For the reasons discussed above, Royal Park's motion for sampling-related expert discovery is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 186.

SO ORDERED.

Dated: November 18, 2019
New York, New York

GREGORY H. WOODS
United States District Judge